### STATE v. MURPHY

(117 S. E., 529)

1. EASEMENTS—PUBLIC HELD NOT TO ACQUIRE ADVERSE TITLE BY USING PATH AND BRIDGE PURSUANT TO PERMISSION OF OWNER.—Where the original entry by the public on the lands of defendant and the establishment of a bridge and the use of a pathway or approach thereon were by permission under a distinct reservation of the right to terminate such permission, the public could acquire no such adverse rights in the land as would support a conviction of defendant for pulling down that portion of the bridge which rested on his premises.

2. EASEMENTS—TENANT WITHOUT AUTHORITY TO WAIVE LANDLORD'S RIGHT TO DETERMINE. PERMISSIVE PUBLIC USE FOR BRIDGE APPROACH. —A tenant by refraining from closing the approach to a bridge, one end of which rested on his landlord's lands, because he was

NOTE.—On permissive use of easement by public as affecting acquisition of title by adverse possession see notes in 1 A. L. R. 890 and 2 A. L. R. 1370.

misinformed that the pathway or approach belonged to the public, waived no right of the landlord to determine the permissive right of the public to use the same as expressly reserved in the original grant of such use; a tenant having no power to waive such rights.

Before WILSON, J., Berkeley, November, 1920. Reversed.

T. W. Murphy was indicted for tearing down a bridge and upon conviction appeals.

*Mr. Octavus Cohen,* for appellant, cites: *Creek was a navigable stream:* 82 S. C., 181; 22 S. C., 50; 42 S. C., 138; *29* Cyc., 289, 292, 311, 312, 325 et seq.; 16 A. & E. Enc. L., 242; 1 McC., 582; 3 Oreg., 457; 142 Cal., 208; 34 Wash., 269; 128 Wis., 297'; 22 R. I., 418; 56 N. Y. S., 834. *Obstruction to navigable stream is a nuisance:* 80 S. C., 512; 30 S. C., 539; 29 Cyc., 311, 312; 97 Me., 151; 117 Mich., 298; 10 Mass., 70; 29 Cyc., 325, 1214. *Use which began permissively cannot ripen into prescriptive right:* 107 S. C., 400; 54 S. C., 294; 80 S. C., 380; 76 S. C., 387; 75 S. E., 721; 85 S. C., 1; 52 S. E., 355; 66 S. E., 326. *Difference between permissive and adverse use:* 76 S. C., 387.

*Mr. A. J. Hydrick, Solicitor,* for the State. *Mr. Thos. P. Stoney* of Counsel.

May 8, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The record shows:

"This case came on for trial at the November, 1920, term of the Court of general sessions, resulting in a verdict of guilty. The testimony, while quite voluminous, was really directed to two very narrow points, as a pulling down of a portion of the bridge in question by the defendant is not denied. As no evidence was offered by the defense, there was, of course, no conflict.

"Several of the witnesses testified to the long use of a bridge across the creek separating the old village of Cain-

hoy from the new village. In order to get to the bridge
from the old village it was necessary to pass through a
lane terminating at the entrance to the Murphy premises.
Thence pedestrians passed across the Murphy lot, in
front of the Murphy residence, to one end of the
bridge, which rests on the Murphy land. The testimony
showed that this way over the lands now owned by Mrs.
Murphy has been in use, with some interruptions of more
or less duration, since approximately 1870. At the end of
the lane, and separating it from the Murphy premises, there
was, in 1895, a gate, according to the testimony of Mr.
Jas. S. O'Hear, a civil engineer, and a native of that
section, who made a survey thereof in 1895, and was called
as a witness by the State. Through Mr. O'Hear the fol-
lowing documents were introduced in evidence, it being
testified that the land therein referred to is the same land
as is now owned and occupied by the Murphys:

"'Cainhoy, January 7, 1869.

"'Dr. John S. O'Hear—Dear Sir: The undersigned
purpose to connect the old and new villages by a footbridge,
inasmuch as this public convenience may in course of time
become by usage a public right, and inasmuch as the afore-
said footbridge will be constructed on lands claimed by Mr.
Sam'l Hamlin and yourself, we think it but proper to ask
your permission to allow one portion (i. e., the west end),
to be built on your claim. We would expressly let you
know that we consider it a favor, and that whenever it be-
comes a nuisance to yourself, executors, administrators, or
assigns, that you or they shall have full power and author-
ity to abate the same.

"'Yours very respectfully,

"'Edward C. Logan.'

"'State of South Carolina, Charleston County.

"'Inasmuch as it is proposed to rebuild the bridge, con-
necting the two villages of Cainhoy, situated and being on
Wando river (the work of rebuilding being now in prog-

ress) ; now inasmuch as the lands on which the said bridge
is being erected are the property of Dr. J. S. O'Hear and
Mr. Sam'l Hamlin; and whereas the original written ac-
knowledgment of the use of the private right for public
purposes has been lost or mislaid; and whereas, should it
not be renewed, time may work a forfeiture of these pri-
vate rights:  Now know all men by these presents, that we,
the undersigned, being members of the executive committee,
appointed at a meeting of all persons interested in, and
who have subscribed money to the rebuilding of the afore-
said bridge, do hereby expressly acknowledge, not only for
ourselves, but for those we represent, the perfect legal right
to the site of the bridge, with paths leading thereto, as
vested in Dr. J. S. O'Hear and Mr. Sam'l Hamlin, and un-
der all circumstances, and at all times to be subject to their
individual wishes and rights; and should it so happen, from
unforeseen circumstances, that it may become necessary for
Dr. J. S. O'Hear and Mr. Sam'l Hamlin to withdraw the
privilege granted, their right shall be unquestioned.

" 'In witness whereof, we do hereby set our hands and
seals this 30th day of June, in the year of our Lord one
thousand eight hundred and seventy-four.  ·

                " 'C. Schuler, Chairman.    [L. S.]
                " 'W. L. Venning.  ,        [L. S.]

" 'In the presence of Simons Lucas.'

"Another one of the State's witnesses, Mr. Venning, who
occupied the land in question as a tenant for several years,
stated that on one occasion, in 1902, he had announced his
intention of putting up a gate at the end of the lane sepa-
rating it from the premises in dispute, but desisted when
informed that he would have no right to do so, as the path-
way over the land belonged to the public.  On cross-exam-
ination Mr. Venning reiterated his certainty about the date
of this occurrence, again positively fixing the date as 1902.

"Some of the witnesses were cross-examined as to the
navigability of the creek over which the bridge in question

passes, and broadly speaking their testimony was to the
effect that while small boats can and do go in there and
rafts have been drifted out of there, and the creek is used
by the people for fishing, shrimping and shooting from
boats, they expressed the opinion that the creek in question
is not a navigable stream. This was objected to by Mr.
Cohen for the defendant on the ground that it was merely
an expression of opinion, and therefore incompetent; wit-
nesses could only testify to the facts from which a con-
clusion might be drawn. This objection was overruled,
and an exception noted.

"At the conclusion of the State's testimony, Mr. Cohen
made a motion on behalf of the defendant for the direction
of a verdict of not guilty, on the ground that no inference
could possibly be drawn from the testimony, other than
that the creek in question is a navigable stream, as a mat-
ter of law; and that, therefore, under the well-known rule
that there can be no prescriptive right to maintain a bridge
over a navigable stream, a verdict of not guilty should be
directed. This motion was overruled.

"At the same time Mr. Cohen moved the Court to direct
a verdict of not guilty on the further ground that under
the necessarily uncontradicted testimony of the State's wit-
nesses, there having been no testimony from the defense,
a verdict of not guilty should be directed, in that the use
of the pathway over the land in question, having been
shown to have begun permissively, there could be no ac-
quisition of title by the public until 20 years after an un-
mistakable declaration on the part of the public to the own-
ers of the premises of the intention to claim adversely to
the owners; and that the only testimony relating to any
declaration of claim of averse interest (if any) was the
testimony of Mr. Venning to the effect that in 1902, only
18 years before the finding of the indictment against Mur-
phy, he had announced that he would put a gate at the en-
trance to the premises from the lane, and refrained from

so doing upon the statement of some one that he had no right to do so as the public claimed to have a right in itself to go over the said premises. This also was overruled."

A verdict should have been directed.

The original entry was permissive; and under a distinct reservation of the right to terminate the easement. We have been cited to no authority, and we know of none, that empowers a mere tenant to waive or relinquish the rights of his landlord. Even the tenant in this case acted under a misstatement of fact.

The judgment is reversed.

MESSRS. JUSTICES COTHRAN and MARION concur.

MR. JUSTICE WATTS, (dissenting). The defendant was tried at November term of Court of general sessions for Berkeley County, 1920, before his Honor, Judge Wilson, and a jury, for tearing down that portion of a bridge which rested on land of wife of appellant, across a creek between the old and new villages of Cainhoy. He was convicted and sentenced and has appealed upon five exceptions imputing error on the part of his Honor. The exceptions raise two points:

(1) Was the stream over which the bridge was erected a navigable stream as a matter of law?

This issue was submitted to the jury of the County, under competent evidence and proper instructions by the Court; the jury found that it was not a navigable stream.

(2) The use of the pathway leading to the bridge having been begun permissively, had the public acquired a prescriptive right to the use of the said highway?

There is no doubt that the use was begun permissively, January 7, 1869, and was recognized as such on June 30, 1874; but later evidence showed, which was properly submitted to the jury for their determination, that the public used it as a matter of right, openly, notoriously, adversely, and consecutively, for the length of time to acquire a right, and made it a public pathway.

We see no error as complained of by the exceptions.

All exceptions should be overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY concurs.