## 12325

### BRASINGTON v. WILLIAMS *ET AL.*

(141 S. E., 375)

1. EASEMENTS—TRANSFER BY DEED CARRIES IMPLIED COVENANT THAT GRANTEE SHOULD POSSESS EASEMENTS REASONABLY NECESSARY TO ENJOYMENT OF GRANTED PREMISES.—Transfer of title by deed carries implication of covenant that grantee should possess whatever easement was reasonably necessary to enjoyment of granted premises, and such implied covenant is one "running with land," which vested in each successive grantee.

2. PLEADING—QUESTION OF EASEMENT OF NECESSITY HELD NOT PRECLUDED BY SUSTAINING OF DEMURRER TO CAUSE SETTING UP SUCH RIGHT ON GROUND OF DEFECTIVE STATEMENT.—In action for obstruction of road, question of acquisition of easement of necessity *held* not precluded by order sustaining demurrer to cause of action setting up such right, where such order merely adjudged defective statement of recognized right, and question of easement of necessity could properly be raised under another cause of action.

3. PLEADING—PLAINTIFF, SUING FOR OBSTRUCTION OF ROAD, NEED NOT IN ALLEGING OWNERSHIP OF EASEMENT, STATE PARTICULAR MANNER IN WHICH HE ACQUIRED TITLE THERETO.—In suit for obstruction of road, in which plaintiff claimed right of way as easement, it was not necessary, in alleging ownership of such easement, to set out in complaint particular manner in detail by which title thereto was acquired.

4. PLEADING—STATEMENT IN COMPLAINT THAT RIGHT OF WAY WAS "APPENDANT AND APPURTENANT" TO PLAINTIFF'S PLANTATION HELD NOT CONCLUSION OF LAW.—In action for obstruction of road, statement in complaint that right of way was "appendant and appurtenant" to plaintiff's plantation or close *held* statement of ultimate fact, and not conclusion of law.

5. EASEMENTS—PLAINTIFF HELD ENTITLED TO ESTABLISH RIGHT OF WAY OF NECESSITY UNDER GENERAL ALLEGATIONS STATING OWNERSHIP OF EASEMENT WITHOUT SHOWING MANNER IN WHICH IT WAS ACQUIRED.—In action for obstruction of road, it is competent for plain-

NOTE: On the general rule as to creation of easements by severance of tract of land with apparent benefit existing, see annotation in 26 L. R. A. (N. S.), 316; 16 A. L. R., 1074; 34 A. L. R., 234; 9 R. C. L., 755; 2 R. C. L. Supp., 870; 4 R. C. L. Supp., 625; 5 R. C. L. Supp., 528; 6 R. C. L. Supp., 574.

As to implication from necessity of easement other than right of way, see annotation in 8 L. R. A. (N. S.), 335; 26 L. R. A. (N. S.), 334; 34 A. L. R., 238; 9 R. C. L., 764, 765; 2 R. C. L. Supp., 871; 4 R. C. L. Supp., 625; 6 R. C. L. Supp., 575.

tiff to establish right of way of necessity under general allegations of cause of action of complaint alleging ownership of land and of right of way, describing it definitely, appendant and appurtenant to his plantation, that such way crosses defendant's land and connects with public highway, and that defendant intended to injure plaintiff and deprive him of his way.

6. COURTS—AFTER OVERRULING DEMURRER, BASED ON FAILURE OF PLAINTIFF TO ALLEGE MANNER OF ACQUIRING EASEMENT, DEFENDANT NOT APPEALING WAS PRECLUDED FROM RAISING QUESTION OF PLAINTIFF'S RIGHT TO URGE WAY OF NECESSITY.—In action for obstruction of road, defendant *held* precluded from raising question of plaintiff's right to urge acquisition of easement of necessity, where demurrer to plaintiff's first cause of action, on ground that it failed to allege specifically manner in which. easement was acquired, was overruled; Court holding it sufficient to allege ownership of easement, and no appeal being taken.

7. EASEMENTS—EASEMENT OF RIGHT OF WAY OF NECESSITY IS CLEARLY RECOGNIZED AND PROTECTED.—Acquisition of easement of right of way over another's land by necessity, which may arise from implication of grant in favor of grantee over land of grantor, or from express or implied reservation in favor of grantor over land of grantee, is clearly recognized and protected.

8. EASEMENTS—WHERE LAND CONVEYED IS SURROUNDED BY GRANTOR'S LAND, LAW PRESUMES GRANTOR INTENDED TO GRANT RIGHT OF WAY (CIV. CODE 1922, § 5216; CONST. 1895, ART. 1, § 17).—Where owner of entire tract conveys part to another, and part conveyed is surrounded by grantor's land, law presumes that, in grant of "all [land] and singular the rights, members, hereditaments, and appurtenances to the said premises belonging, or in any wise incident or appertaining" under form of deed (Civ. Code 1922, § 5216), grantor intended to grant all rights essential to enjoyment of premises conveyed, including right of way; such principle not being abrogated by Const. 1895, Art. 1, § 17.

9. EASEMENTS—RIGHT OF WAY OF NECESSITY RESTS ON IMPLIED CONSENT.—Necessity does not create right of way of necessity, but is circumstance indicating contemplated intent of grantor and grantee, necessarily involving grantor's consent, since consent of owner must be implied.

10. EASEMENTS—"EASEMENT" IS PRIVILEGE WHICH OWNER OF ONE TENEMENT ENJOYS IN RESPECT TO SUCH TENEMENT IN OR OVER TENEMENT OF ANOTHER.—"Easement" which is to be distinguished from license, is privilege without profit, which owner of one tenement has right to enjoy in respect to such tenement in or over tenement of

another person, whereof latter is obliged to suffer or refrain from doing something on his own tenement for advantage of former.

11. EASEMENTS—EASEMENT MUST BE INCORPOREAL, IMPOSED ON CORPOREAL PROPERTY FOR ITS BENEFIT, BUT CONFERS NO RIGHT TO PARTICIPATION IN PROFITS, AND THERE MUST BE TWO DISTINCT TENEMENTS; "DOMINANT"; "SERVIENT."—Essential incidents of easement are that it is incorporeal, is imposed upon corporeal property, confers no right to participation in profits arising from such property, is imposed for benefit of corporeal property, and that there must be two distinct tenements, namely the "dominant," to which the right belongs, and the "servient," on which obligation rests.

12. EASEMENTS—EASEMENTS MAY BE CREATED BY CONDEMNATION, DEDICATION, ESTOPPEL, OR GRANT.—Easements may be created by condemnation, dedication, estoppel, and grant, express, implied, or presumed, though common law, in addition, recognized way of necessity, implication, prescription, ancient window doctrine, and reservation.

13. EASEMENTS—EASEMENT IS EITHER "APPURTENANT" OR "IN GROSS."—Easement is either "appurtenant," in which case it must inhere in land, concern premises, have one terminus on land of party claiming it, and be necessary to ejoyment thereof, or "in gross," in which case it is mere personal privilege to owner, and incapable of transfer by him.

14. EASEMENTS—LEGAL REQUIREMENTS OF "RIGHT OF WAY OF NECESSITY" ARE UNITY OF TITLE, SEVERANCE, AND NECESSITY.—Legal requirements of easement of "right of way of necessity" are unity of title, by which is meant that owner of dominant estate must show that his land and that of owner of servient estate once belonged to same person, severance of title, and necessity.

15. EASEMENTS—"NECESSITY," TO WARRANT RIGHT OF WAY OF NECESSITY, MUST BE ACTUAL, REAL, AND REASONABLE, AS DISTINGUISHED FROM INCONVENIENCE.—To fulfill requirements for easement of right of way of necessity, the necessity must be actual, real, and reasonable, as distinguished from inconvenience, but it need not be absolute and irresistible necessity.

16. EASEMENT—IT IS EASIER FOR GRANTEE TO ESTABLISH RIGHT OF WAY OF NECESSITY OVER GRANTOR'S LANDS THAN FOR GRANTOR TO ESTABLISH SUCH EASEMENT OVER LANDS CONVEYED.—It is easier for grantee to establish an easement of necessity over land remaining in title of grantor than for grantor to establish such easement over land conveyed, since in latter case plaintiff would be claiming in derogation of his own grant, while in former grantor will be presumed to have granted that without which land conveyed could not be enjoyed.

17. APPEAL AND ERROR—IN REVIEWING REFUSAL TO DIRECT VERDICT, ONLY QUESTION IS WHETHER ANY ADMISSIBLE, RELEVANT TESTIMONY OF SUBSTANTIAL PROBATIVE VALUE TENDED TO ESTABLISH ESSENTIAL ALLEGATIONS OF COMPLAINT.—In review of judicial ruling refusing motion for directed verdict, only question is whether there is any admissible and relevant testimony of substantial probative value tend to establish essential allegations of complaint; determination of weight of evidence not being involved.

18. APPEAL AND ERROR—IN REVIEWING REFUSAL OF DIRECTED VERDICT, TESTIMONY IS CONSIDERED MOST FAVORABLY TO PARTY AGAINST WHOM VERDICT IS SOUGHT TO BE DIRECTED.—In review of judicial ruling refusing motion for directed verdict, testimony must be considered most favorably to party against whom verdict is sought to be directed.

19. EASEMENTS—QUESTION OF RIGHT OF WAY OF NECESSITY HELD FOR JURY, WHERE WAY CLAIMED WAS USED MANY YEARS, AND PLAINTIFF'S LAND WAS BOUNDED BY RIVER ON THREE SIDES.—In action for obstruction of road, evidence *held* sufficient to take to jury question of right of way of necessity, where three sides of plaintiff's land was bounded by river, the other available road from fourth side had been abandoned, and road claimed had been used for many years.

20. EVIDENCE—COURT JUDICIALLY KNOWS EXISTENCE AND COURSE OF WATEREE RIVER.—Court will take judicial notice of existence and course of Wateree River.

21. EASEMENTS—WHERE OWNER OF SERVIENT ESTATE SELECTS IMPRACTICABLE ROUTE FOR WAY OF NECESSITY, CLAIMANT MAY SELECT WAY.—Where right of way over grantor's land was necessary, and owner of servient estate selected impracticable or impossible route, claimant would have to select way, having due regard to interest and rights of both parties.

22. EASEMENTS—NEITHER IDENTITY IN ROUTE NOR POSSESSION FOR ANY LENGTH OF TIME IS REQUIRED IN ESTABLISHING RIGHT OF WAY OF NECESSITY.—Identity of route is not essential in establishing right of way of necessity, nor is possession for any length of time necessary, but only question to be determined is whether necessity for way exists and location of way.

Before BONHAM, J., Kershaw, March, 1924.   Affirmed.

Action by S. F. Brasington against Ellen M. Williams and another.   Judgment for plaintiff, and defendants appeal.

*Messrs. E. D. Blakeney, J. T. Gettys,* and *D. W. Robinson,* for appellant, cite: *Order sustaining demurrer not*

*having been appealed from is res adjudicata:* 129 S. C., 51; 125 S. C., 67. *Right of way by necessity:* 2 McC., 447; 3 McC., 139; 53 S. C., 513; 2 Hill, 641; 38 A. L. R., 1306, 1310; Ar., 1, Sec. 23, Const., 1868; 14 S. C., 417. *Repealed:* Ar., 1, Sec. 17, Const., 1895; 53 S. C., 119. *Wateree river a navigable stream by act 1753:* 67 S. C., 192. *Courts will recognize as such:* 47 S. C., 474; 82 S. C., 187; 112 S. C., 539; 30 S. C., 545; 28 S. C., 26; 80 S. C., 512; 111 S. C., 195; 24 Stat., 1032. *Navigable streams declared to be highways:* Sec. 2901, Vol. 3, Code, 1922; 42 S. C., 150; 82 S. C., 187. *Right of way by prescription:* 107 S. C., 400; 2 McC., 449; 3 McC., 138; 53 S. C., 514; 3 S. C., 75; 77; 63 S. C., 503; 118 S. C., 205; 114 S. C., 306; 48 S. C., 486. *Permissive possession cannot ripen into right:* Dudley L., 94; Chev., 1; 103 S. C., 460; 124 S. C., 279; 9 R. C. L., 778, Sec. 37; 1 McC., 72; 6 Rich., 403; 123 S. C., 409. *Adverse possession must be twenty years:* 2 Hill, 642; 6 Rich., 400. *Way claimed must be definite and certain:* 2 McC., 445; 3 McC., 131; *Dudley, 92;* 9 R. C. L., 775, Sec. 35. *Same, must be exclusive in party claiming it:* 1 Bail., 58; Id., 341; 1 Rich., 58. *Must be continuing adverse possession:* 105 S. C., 340; 6 Rich., 67; Chev., 4; 113 S. C., 9; 114 S. C., 459; Id., 306; 2 Rich., 136; 9 R. C. L., 777, Sec. 36. *Before severance:* 5 Rich., 187; 8 Rich., 162. *Woodland:* 2 Rich., 136; 1 Bail., 342; Id., 358; 107 S. C., 401; 86 S. C., 158; 125 S. C., 291; 74 S. C., 429. *Abandonment:* 6 Rich., 403; 97 S. C., 429; 85 S. C., 443; 89 S. C., 395; 3 Strob., 224; 87 S. C., 71; 105 S. C., 329. *Adverse possession must be clearly proven:* 6 Rich., 68; 95 S. C., 120. *Tenancy relation:* 97 S. C., 334; 114 S. C., 382; 77 S. C., 138; 112 S. C., 10; 1 N. & McC., 373; 113 S. C., 250; 37 S. C., 504; 124 S. C., 279; 9 R. C. L., 777, Sec. 36; 40 Am. Dec., 573. *Statements and admissions:* Jones on Ev., Secs. 239-241; 53 S. C., 31; 48 S. C., 485-487; 100 S. C., 279; 115 S. E., 767; 109 S. C., 428; 110 S. C., 96.

*Messrs. Mendel L. Smith* and *I. C. Hough,* for respondent, cite: *In stating ownership of an easement, sufficient to allege ownership generally:* 7 Enc. P. & P., 258; 19 C. J., 266; 53 S. C., 518; 39 S. C. L., 178; 125 Ind., 326. *Right of way by necessity recognized in this State:* 13 S. C. L., 445; 14 S. C. L., 133; 39 S. C. L., 289; Id., 405; 42 S. C. L., 158; 18 S. C., 254; 32 S. C., 130; 53 S. C., 513. *Same,* provided in Art. 1, Sec. 23, Const. 1868 and Sec. 1175-1180 Rev. Stat., 1893. *Not repealed by Const. 1895 as declared:* 53 S. C., 119. *Right by necessity:* 87 S. E., 224; Id., 371; 6 S. E., 136; 46 L. R. A. (N. S.), 156; 40 L. R. A., 105; 7 Am. Dec., 188; 13 S. C. L., 446. *Easements:* Jones on Easements, Sec. 1; 127 S. E., 297. *In gross:* 21 S. C., 223; 34 S. C., 209; 91 S. C., 131. *Requisites to acquisition of way by necessity:* 24 S. E., 353; 103 Ind., 582; 73 S. E., 902; 42 L. R. A., 570; 129 S. E., 274; 82 Am. Dec., 621; 63 L. R. A., 820; 99 A. S. R., 964; 2 McC., 446; 3 McC., 133; 8 Rich., 163; 32 S. C., 133. *"Necessity":* 169 S. W., 489; 97 N. E., 54; 10 Atl., 76; 152 N. E., 734; 75 S. E., 764; 38 Am. Rep., 671; 78 S. E., 233; 9 R. C. L., 791. *Prescriptive right:* 2 Strob., 60; 54 S. C., 294; 74 S. C., 425; 80 S. C., 380; 39 S. C., 23; 67 S. C., 439; 63 S. C., 494; 76 S. C., 382; 77 S. C., 437; 86 S. C., 158; 80 S. C., 544; 93 S. C., 550; 96 S. C., 245. *How acquired:* 2 McC., 133; 3 McC., 133; 2 Hill, 389; Id., 642; 6 Rich., 400; 107 S. C., 401; Dudley, 92; 33 S. C. L., 63; 54 S. C., 294; 2 Supp. R. C. L., 874; 5 Supp. R. C. L., 529; 25 S. C. L., 1; 12 S. C. L., 72; 1 Bail., 56; 3 S. C., 75; 103 S. C., 460; 118 S. C., 205; 125 S. C., 291; 45 S. C. L., 159; 96 S. C., 255; 74 S. C., 425; 80 S. C., 380; 86 S. C., 158; 22 S. C., 166; 66 S. W., 601; 41 Atl., 785; 69 N. Y. S., 898; 125 S. E., 700; 106 S. E., 876; 86 S. C., 159. *Abandonment a question of fact:* 34 S. C. L., 224; 39 S. C. L., 405; 40 S. C. L., 403; 22 S. C., 166; Id., 547; 37 S. C., 334; 34 A. S. R., 752; 65 S. C., 525; 87 S. C., 71; 85 S. C., 443; 97 S. C., 429; 89 S. C., 395; 92 S. E., 850.

November 30, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

I regard this case as one of the very greatest importance, the decision of which will control, in a measure, one of the most constantly recurring grounds of controversy in reference to a right which is held to as tenaciously, and asserted as vigorously, as the recognized love of the Anglo-Saxon for his land: The right to the use of a road. I have accordingly given to it my most earnest and laborious consideration.

The action commenced January 20, 1923, is for damages and an injunction, by reason of the obstruction of a road leading from what is known as the "Charleston Road," about four miles from Camden, through the lands of the defendant Ellen M. Williams, known as "Mulberry," to a farm owned by Dr. Brasington, the plaintiff, known as "Belmont," claimed by the plaintiff as a right of way.

A temporary injunction was issued at the time of the commencement of the action, and was subsequently continued until the hearing of the case upon the merits.

The law side of the case was tried before his Honor Judge Bonham and a jury, in March, 1924, the result of which was a verdict in favor of the plaintiff for $1 damages; and, upon the rendition of that verdict, a decree for a permanent injunction was entered on the equity side. From the judgment entered upon the verdict, and from the decree, the defendants have appealed. (While Ellen M. Williams and her husband, David R. Williams, are both made defendants in the case, the title to the property appears to be in Ellen M. Williams, and I shall refer to the defendants as the defendant, meaning Ellen M. Williams.

The plaintiff seeks to establish his easement of a right of way upon two grounds: (1) That he is entitled to it as a right of way of necessity; (2) that he is entitled to it as a right of way, appurtenant to his land, by prescription.

The defendants moved for a directed verdict upon the following grounds:

"(1) Plaintiff has shown no right of way by necessity, because:

"(a) He has not shown under the pleadings and evidence any such necessity as would entitle him to a right of way over the defendant's land;

"(b) No such right of way exists under the Constitution and laws of this State at the present time.

"(c) At the time of the sale and division of the Chestnut lands the roadway leading along the dividing line between 'Mulberry' and the Deas or Barnes land, also known as the Getty's road, was agreed upon and accepted as the road to and from 'Belmont,' and the plaintiff is bound thereby.

"(2) Plaintiff has shown no right of way by grant.

"(3) Under the pleadings and evidence, plaintiff has shown no right of way by prescription, because:

"(a) He has shown no continuous, uninterrupted user adverse and as of right of the identical way for a period of 20 years by himself and by his predecessors in title, in privity with whom he claims.

"(b) The undisputed evidence shows that the use of any way over 'Mulberry' by the owners of 'Belmont' originated and began by license or permission, and there is no evidence showing a change of this character of user."

The motion was refused by his Honor Judge Bonham. The exceptions of the defendants assign error in such refusal, and in certain charges, refusals to charge, and modifications of the requests to charge.

The situation cannot be completely explained or understood without reference to the blueprint in evidence, which, on a greatly reduced scale, omitting the multitude of courses and distances, should be incorporated in the report of the case.

The plaintiff's plantation, "Belmont," containing 801 acres, is largely embraced within, and almost completely

surrounded by, a loop in the Wateree River, which begins at the northern end of the eastern line of the tract, and describes almost a circle, of about seven miles in length, back to the southern end of said eastern line, at a point about half a mile from the beginning. The tract is, roughly speaking, in the shape of a horseshoe. The eastern line referred to represents a line drawn between the two ends of the horseshoe, commonly called the "heel." The eastern line of the plaintiff's plantation divides it from the defendant's plantation and lands belonging to Deas and Barnes; the dividing line between the defendant's land and that of the other parties named striking the eastern line of the plaintiff's land nearly midway between the northern and southern ends of that line.

The road which the plaintiff claims as his right of way begins at a point within the limits of his tract, crosses the said eastern line of his land, quite near the *northern* end of it, extends 7,000 feet (1-1/3 miles), practically northeast over the lands of the defendant to what is known as the "Mulberry quarters"; thence at right angle still over the defendant's land, practically due east, half a mile, to the "Charleston road."

A second road, referred to as the Getty's road, began at a point within the limits of the plaintiff's land, crossed the said eastern line of his land, quite near the *southern* end of it, extended practically northeast, over the land of the defendant, about eight-tenths of a mile to a point where it forked; the upper fork extended practically northeast, over the land of the defendant, about eight-tenths of a mile to a stone corner on the "Charleston road"; the lower fork, known as the Powell road, extended practically southeast, over the lands of Powell, about one and one-fourth miles, to a point on the "Charleston road," some half mile south of the stone corner.

I shall not consider, for I do not think it necessary, any other question in the case than whether there was sufficient

evidence of the plaintiff's acquisition of an easement of right of way, of necessity, over the land of the defendant, to warrant a submission of the case to the jury.

It is conceded that all of the land involved or referred to in this litigation, the Belmont plantation, the Mulberry plantation, and the lands of Deas and Barnes lying south of Mulberry and east of Belmont, constituted an entire plantation, which, prior to 1869, belonged to General James Chestnut, whose home site was located upon Mulberry. In 1869 Belmont was conveyed to Clarke and Gettys. In 1873 Clarke conveyed his interest to Gettys. In 1883 Gettys conveyed Belmont to Witte. In 1919 the heirs of Witte conveyed to the plaintiff herein, Brasington. The chain of the defendant, Mrs. Williams', title does not so distinctly appear, but it is conceded that both Brasington and she claim from a common source of title, General Chestnut.

It appears that that part of the road claimed as a right of way by the plaintiff, leading from the northern end of the eastern line of Belmont, over the lands of Mulberry, up to what was known as the "Mulberry quarters," was opened by General Chestnut, and had been used by him and others for many years.

It also appeared that an old road, leaving the road just referred to at the "Mulberry quarters," led over the lands of Mulberry at right angles practically out to the "Charleston road." This old road was opened by General Chestnut, and was used by him and others for many years. It has been changed in some particulars, as will be noted, by the plaintiff, and it constitutes a link in his claimed right of way, leading from Belmont to the "Mulberry quarters," and thence to the "Charleston road."

As I view the matter, it does not make any difference whether or not the road claimed by the plaintiff had actually been opened and used by General Chestnut and others at the time the plaintiff purchased Belmont. The transmutation of the title from General Chestnut by deed

to his immediate grantee carried the implication of a covenant that the grantee should possess whatever easement was reasonably necessary to the enjoyment of the granted premises; and such implied covenant was one "running with the land," which vested in each successive grantee.

The appellants contend that the question of acquisition of the easement by reason of necessity has been precluded by the order of his Honor, Judge Townsend, sustaining a demurrer to the third cause of action which set up the right.

The order sustaining the demurrer to the third cause of action only determined that there was a *defective* statement in the particulars indicated in the order, and which were adjudged by the Circuit Judge as essential to a cause of action setting up a right of way of necessity, but did not adjudge that a right of way of necessity does *not* exist under our legal system. In holding that there was a failure to allege a unity of title, and also the degree of necessity required to establish such a way, does not by any means indicate that, if such facts had been alleged, there would not have been a proper statement of cause of action. The order simply *adjudged a defective* statement of a recognized right, but did not attempt to deny the existence of the right itself. In the case of *Whaley v. Stevens,* 21 S. C., 221, the Court held that the complaint was demurrable upon the ground that it did not state that the prescriptive right of way involved in that case was reasonably necessary for the enjoyment of the premises, and, therefore, failed to state a cause of action setting up an appurtenant right of way. It certainly could not be contended that this defective statement also adjudged that such a prescriptive right of way did not exist under the law of this State.

In the case of *Bailey v. Gray,* 53 S. C., 518; 31 S. E., 354, the Court held that the complaint did not show that the alley in question was appurtenant to the premises of the

plaintiff. It will not be contended that this defective statement involved the right to the alley, in the event that the cause of action had set out all matters essential to a recovery.

If this be true, then respondent had a right to prove such a way under the *first cause of action,* for the rule is generally recognized that it is not necessary, in alleging the ownership of an easement, to set out in the complaint the *particular manner in detail* by which the title thereto was acquired.

In 7 Ency. Pleading and Practice, 258, the rule is thus stated:

"In stating an ownership of an easement, it is not necessary to show the particular manner in which the title was acquired. It will be sufficient to allege ownership generally."

Indeed, his Honor, Judge Townsend, in his order, recognized this principle in saying:

"On hearing the demurrer to the complaint, I am of the opinion that it should be overruled as to the first cause of action. It is sufficient to allege ownership of the easement or way claimed, without showing or alleging the particular manner in which title thereto was acquired. 7 Enc. Pleadings and Practice, 258."

In 19 *Corpus Juris,* 266, the principle of practice is thus declared:

"In an action for injuring or interfering with an easement, the complaint must allege plaintiff's ownership of the easement in question (citing cases from Alabama, Arkansas, Indiana, Kentucky, New Hampshire, Oregon, Texas, and Utah). According to some decisions it is necessary to set out the particular manner, whether by prescription, grant, or otherwise by which the title was acquired (citing one case from North Carolina and one from New Hampshire), although the weight of authority is to the contrary, in the absence of some special statutory requirement (as seems to

be the case in Pennsylvania); it being held sufficient to allege generally plaintiff's right to the easement and a violation of this right by defendant"—citing in support thereof cases from Alabama, California, Illinois, Indiana, Massachusetts, New Hampshire, Oregon, South Carolina, and West Virginia.

The case referred to from our own State is the case of *Craven v. Rose,* 3 S. C., 72. This was an action of trespass on the case for the obstruction of a private way claimed by plaintiff over the land of the defendant. The plaintiff obtained a verdict, and, on appeal, one of the exceptions (3) was that the "Plaintiff, in framing his declaration, should have set forth, with sufficient certainty, whether claimed by *grant* or *prescription,* which he has not done."

In disposing of this exception, the Court held, first, that the objection to the declaration came too late, after verdict, and that it was *"without sufficient ground,"* the Court declaring, at page 76, that "it was enough for the plaintiff to count on a possessory title, *without* alleging whether the grant in which it had its origin is susceptible of direct proof or only *to be presumed."*                    .

It will thus be clearly observed that this case determines, in fact, that in an action for the obstruction of a way all that is necessary to allege is the *possession* of the *dominant tenement* with its appurtenances, and *that by reason thereof* the plaintiff "then had, and still of right ought to have, a certain way," describing it with such a degree of definiteness as to enable it to be readily located, and that the plaintiff's right thereto has been unlawfully invaded to his damage.

The complaint in the *first* cause of *action* alleges:
4, 5    That the plaintiff was, at the time of his alleged grievances, the owner, and in possession of, the land designated as "Belmont," with all the appurtenances thereto belonging or appertaining; that at said time he "had and

used, and still of right ought to have and use, a certain
way," describing it definitely; that "said way is appendant
and appurtenant (which is a statement of an ultimate fact,
and *not* a conclusion of law, 9 R. C. L., 74) to the plain-
tiff's said plantation or close; that the said way has one ter-
minus thereon, and is reasonably necessary to the enjoyment
thereof; that said way crosses the defendant's land, and
connects with the public highway; that the defendant in-
tended to injure the plaintiff and deprive him of his way
and obstruct the same while the plaintiff was so possessed
of said plantation and close, with all of its appurtenances,"
etc., to his great injury and damage.

In 9 R. C. L., 74, above referred to, it is stated that "an
allegation that the plaintiff is the owner of a described right
of way or other easement over the defendant's land, and
such easement is appurtenant to the plaintiff's land, is an
averment of an ultimate fact, not of a conclusion of law,
and has been held to be a sufficient statement of the title to
be established."

In the case of *Hall v. Hedrick,* 125 Ind., 326; 25 N. E.,
350, the rule is thus stated:

"The averment in the complaint that [the plaintiff] is
the owner of a certain tract of real estate, and also of an
easement and right of way across the land of the defendant
(describing it), is a sufficient allegation of ownership to
withstand a demurrer."

It is, therefore, obvious that, under the authorities gen-
erally recognized in this and other jurisdictions, it was per-
fectly competent for the plaintiff in this action to establish
a right of way of necessity under the general allegations of
the *first cause of action* of the complaint, if the proof was
responsive.

I think, moreover, that the appellant is precluded
from raising this question by the following consid-
erations:

Appellants' attorneys demurred to the *first* cause of action upon the specific ground that the complaint failed to allege *particularly* and *specifically* the act or acts, contract or contracts, or prescription, grant, conveyance, or other matters giving to the plaintiff the right which he therein attempted to set up, and by virtue of which he had, and ought to have, a certain way over the plantation of the defendant. The Circuit Judge *overruled* the demurrer, and held that *"it is sufficient to allege ownership of the easement or way claimed, without showing or alleging the particular manner in which title thereto was acquired."*

Appellants' attorneys also submitted a motion to make the complaint more definite and certain in the particulars which were made the basis of the demurrer, and reserved in their answer the right to insist upon this motion, which was heard and overruled by the Circuit Judge.

*No appeal* was taken from either one of these orders, and the appellants are, therefore, clearly bound by the ruling of Circuit Judge to the effect that, under the general allegations of the *first* cause of action, it was *not necessary* to allege the manner in which the *title* was acquired, and, in substance, that, while plaintiff could not establish a way of necessity under the *third* cause of action, on account of defective averment, the allegations of the *first* cause were ample to embrace any easement.

Not a single objection was raised to the competency of any of the testimony offered at the trial to establish a *right of way by necessity.* No reference whatever was made to the contention, based upon any such position, that the plaintiff could not establish a right of way of necessity under the *first* cause of action in any of the grounds upon which the motion for a directed verdict was made.

The motion for directed verdict was based: (1) On *insufficiency of evidence* under the pleadings to establish a way of necessity; and (2) a denial of the right under the Con-

stitution of 1895, and not upon the principle of *res adjudicata* arising from the order of Judge Townsend.

In the brief of appellants' attorneys now presented to the Court in support of this appeal, the contention of *respondent* is virtually conceded in the following language of counsel:

"The first cause of action is simply a general statement *under which one might claim a grant, a way of necessity, or a prescriptive right.* It is followed by the next two, which are more specific."

Furthermore, the presiding Judge charged the jury specifically and fully upon the subject, and particularly must have attracted the attention of counsel to the fact that the acquisition of necessity was an issue in the case by his modification of the first request to charge of the defendants. If, as the appellants now contend, that was an issue eliminated by the order of Judge Townsend, the attention of the presiding Judge should have been then called to the contention, as has been held in many instances.

From the earliest period of our judicial history the acquisition of an easement of right of way over another's land, by necessity, has been clearly recognized and protected. It may arise from the implication of a grant thereof in favor of the *grantee* of land over the land of the grantor, or it may arise from an express or implied reservation in favor of the *grantor* over the land of the *grantee*.

For instance, where the owner of an entire tract conveys a part of it to another, and the part conveyed is surrounded by the land of the grantor, so that the grantee has no ingress or egress except over the land of the grantor, the law presumes that in the grant of "all [land] and singular the rights, members, hereditaments, and *appurtenances* to the said premises belonging, or *in any wise incident or appertaining*" (form of deed, Section 5216,

3 Code 1922), the grantor intended to grant all rights essential to the enjoyment of the premises conveyed.

The same result follows from a reservation by the grantor in the premises conveyed. See *Crosland v. Rogers,* 32 S. C., 130; 10 S. E., 874. A discussion of this mode of acquisition, or, strictly speaking, reservation, does not concern the present inquiry, and need not be pursued.

"A right of way from necessity is where a man having several tracts of land, sells one which is surrounded by the others, having no way of ingress and egress but through one of those reserved. So, even if he reserve the tract in the middle for himself, he is entitled to a way through necessity." *Lawton v. Rivers,* 2 McCord, 445; 13 Am. Dec., 741.

"It is indeed, said, that what is usually called the right of way from necessity, is by grant; because where a thing is granted, the law implies a grant of everything necessary to the enjoyment of it. * * * To establish such right, nothing is required but to show the necessity. Neither time nor occupation are necessary. If the necessity has existed but for a day, the claim is as well founded as where it has existed for half a century; and although the right may never have been enjoyed, yet its existence will be co-extensive with the necessity." *Lawton v. Rivers,* 2 McCord, 445; 13 Am. Dec., 741.

"The necessity by which a person derives a right of way is when one person sells to another lands inclosed on all sides by other lands. Here the law imposes an obligation on the seller to allow the purchaser a right of way over his adjacent land. * * * This is also said to be a right by grant, because the law implies a tacit consent on the part of the seller that the purchaser shall have free ingress and egress to and from the land so situated." *Turnbull v. Rivers,* 3 McCord, 132; 15 Am. Dec., 622.

"But where the easement is essential to the enjoyment of the land, and the estate cannot be enjoyed without it, the easement of necessity is appurtenant to the estate, and will pass with it to the purchaser." *Ferguson v. Witsell,* 5 Rich. Law, 280; 57 Am. Dec., 744.

"Apart from all consideration of time, there is implied, upon the severance of a heritage, a grant of all of those continuous and apparent easements, which have in fact been used by the owner during the unity, though they have had no legal existence as easements, as well as of all those necessary easements without which the enjoyment of the several portions could not be fully had." *Elliott v. Rhett,* 5 Rich. Law, 405; 52 Am. Dec., 750.

In *Screven v. Gregorie,* 8 Rich. Law, 158; 64 Am. Dec., 747, the Court quotes from a case in 1 Wins. Saund., 323:

"Where a man having a close surrounded with his own land, grants the close to another, the grantee shall have a way to the close over the grantor's land as incident to the grant, for without it he cannot derive any benefit from the grant."

In the case of *Smith v. Virginia Co.,* 143 Va., 159; 129 S. E., 274, the Court said:

"Where one person grants land to another which is entirely surrounded by the grantor's land, or partly by the land of the grantor, and partly by the land of a third person, the law, even though the deed be silent on that subject, implies a grant of a right of way of necessity across the lands of the grantor to the public highway. The right of way thus acquired remains vested in the grantee and his successors in title so long as the necessity therefor continues to exist. The reason for the rule is that such a right is necessary to the use and enjoyment of the land conveyed."

In *Crosland v. Rogers,* 32 S. C., 130; 10 S. E., 874, the Court says:

"\* \* \* That such an easement may come into existence in one of *three* ways, to wit, either by express grant, by adverse use for twenty years, which is prescription and presumes a grant, or where the claimant has been in possession of both the dominant and the alleged servient tenement, and while in this possession he creates the easement (or what would have been an easement had it been over another's land), and he afterwards sells a portion of the land over which the alleged easement runs, reserving the easement either expressly or under circumstances which implied a reservation."

It is manifest that the case before the Court was one of the character last described, where the *grantor* was claiming an easement over the land conveyed by him to the *grantee,* the reverse of the claim now under consideration. I do not think that the enumeration of instances in which the easement could arise was intended to be exclusive. If so, it was clearly an inadvertence in omitting the instance of where the *grantee* is claiming an easement upon the land of the grantor, under circumstances from which a grant of the easement would be implied, as necessary to the enjoyment of the premises granted. I think that this is demonstrated by this portion of the opinion:

"And it seems to be less difficult for the *grantee* of the portion sold to establish the easement than the *grantor,* for the reason that the grantor ought not to be allowed to derogate from his absolute deed by claiming rights and burdens over the land sold in the face of his covenants of warranty, even though said burden might have been apparent and continuous at the time."

In the case of *Bailey v. Gray,* 53 S. C., 513; 31 S. E., 354, the Court distinctly recognizes the right of a grantee to acquire by implication a right of way of necessity over the land of another, by its discussion and denial of the right in that particular case upon the ground that the grantee had access to his lot by means at two public streets, and could

not therefore claim the easement as of necessity, although the convenience may have been very great and desirable.

The principle that one who conveys a part of his land to another, and such conveyed portion cannot be enjoyed without the right of ingress and egress over the grantor's land, it will be presumed that the grantor conveyed all the rights necessary to the enjoyment of the conveyed portion, is thoroughly settled by the common law and the decisions of this Court. It is so clearly just that it will require the strongest showing possible of statutory or constitutional enactment to induce one to think that it has been abrogated.

The appellant contends that this abrogation *has* taken place in this way: That the Constitution of 1868, Art. 1, § 23, provided that a right of way could be acquired through condemnation proceedings, by persons or corporation for certain purposes; that the General Assembly provided in 1872 (Rev. Stat. 1893, §§ 1175–1180) the machinery whereby such sites could be acquired; that this Court, in the case of *Beaudrot v. Murphy,* 53 S. C., 118; 30 S. E., 825, decided that, under the Constitution of 1895, Art. 1, § 17, providing that "private property shall not be taken for private use without the consent of the owner," the provision of the Code of 1893, above referred to, had been repealed, and that consequently Murphy, who claimed the right to *condemn* a right of way over Beaudrot's lot, when he did not claim under Beaudrot or was not hemmed in on all sides by Beaudrot, and had other ways of access to his lot, although inconvenient, could not proceed by *condemnation;* that, because of the omission in the Constitution of 1895 of the authority in the Constitution of 1868 for the statute of 1872 and 1893, the right of acquisition by necessity no longer exists.

The two things are entirely different. The acquisition of a right of way under the Constitution of 1868 and the statutory provisions for such acquisition was presumed to be *against the consent of the owner.* The acquisition by the

grantee of a right of way over the land of the grantor is based upon the presumption of a grant, certainly not against the consent of the grantor.

The position of appellants entirely ignores the fact that *consent,* even for the constitutional purpose, may not only be *expressed,* but it may be *"implied"* or *"presumed."* The doctrine of the acquisition of title to land by a continuous, adverse use for 20 or more years rests entirely upon the theory that the law presumes a grant, operative from the beginning of the period, which involves the idea of original *consent* as much as if the land were held under an express grant. So, in the case of *easement* by *necessity,* the theory of the law is that the title to the same rests upon an *implied* or *presumed* grant, as the law presumes that, where a person is at one time the owner of the servient and dominant tenements as one tract, and conveys a part thereof to another, it is his intention also to convey that which is reasonably and actually necessary for the enjoyment of the land conveyed.

The *necessity* does *not* create the right to a way of necessity (*Carmon v. Dick,* 170 N. C., 305; 87 S. E., 224), but is a *circumstance* that indicates the contemplated *intent* of grantor and grantee, necessarily involving the grantor's *consent,* where the former, being the owner of the entire tract, conveys a part thereof, and said part is either wholly environed by the lands of the grantor, or partially by his lands and lands of strangers (*Gwinn v. Gwinn,* 77 W. Va., 281; 87 S. E., 371), or is inaccessible, except by means of ingress and egress over the part held (*Bond v. Willis,* 84 Va., 796; 6 S. E., 136), or by reason of physical obstruction cannot otherwise be reached except by an expenditure grossly disproportionate to the value of the land (*Crotty v. Coal Co.,* 72 W. Va., 68; 78 S. E., 233; 46 L. R. A. [N. S.], 156), or has no outlet to a public highway (*Ritchey v. Welch,* 149 Ind., 214; 48 N. E., 1031; 40 L. R. A., 105. *Gayetty v. Bethune,* 14 Mass., 49; 7 Am. Dec., 188).

In the case of *Lawton v. Rivers,* 2 McCord, p. 446; 13 Am. Dec., 741, Mr. Justice Nott, discussing the way of necessity, says:

"It is indeed, said, that what is usually called a right of way from necessity is by *grant;* because, where a thing is granted, the law implies a grant of everything necessary to the enjoyment of it."

In the case of *Turnbull v. Rivers, supra,* page 139, the Court says:

"This is also said to be a right by grant, because the *law implies a tacit consent* on the part of the seller that the purchaser shall have free ingress and egress to and from the land so situated."

It is therefore plain, when the requirements of a *way of necessity* are fully met, the *"consent* of the owner" is as much *implied* as it is *presumed* in a presumed grant arising from a hostile possession, and it certainly will not be contended that a prescriptive right is denied under Constitution of 1895.

It may be just as well, at this time and under this question, to refer to some of the general principles determining the nature and incidents of the easement, or private right of way, so far as the same may be involved in this case.

An easement, which is to be distinguished from a mere license, has been defined to be "a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement in or over the tenement of another person, whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former." Jones on Easements, § 1.

The essential incidents of an easement are: (1) It is incorporeal; (2) is imposed upon corporeal property; (3) confers no right to a participation in the profits arising from such property; (4) is imposed for the benefit on corporeal property; and (5) there must be two

distinct tenements, namely, the dominant, to which the right belongs, and the servient, upon which the obligation rests. Jones on Easements, § 1.

There seems to have been nine methods recognized under the common law for the creation of an easement, namely, by grant, estoppel, way of a necessity, implication, dedication, prescription, ancient window doctrine, reservation, or condemnation. *Davis v. Robinson,* 189 N. C., 589; 127 S. E., 697. Of course, this enumeration could be materially reduced by strict regard to the principle that lies at the basis of such rights, as condemnation, dedication, estoppel, grant, express, implied, or presumed, would probably embrace every such case.

An easement is either "appurtenant" or "in gross." An *appendant* or *appurtenant* easement must inhere in the land, concern the premises, have one terminus on the land of the party claiming it, and be essentially necessary to the enjoyment thereof. It attaches to, and passes with, the dominant tenement as an appurtenance thereof. An easement, or right of way, *in gross* is a mere personal privilege to the owner of the land and incapable of transfer by him, and is not, therefore assignable or inheritable. *Whaley v. Stevens,* 21 S. C., 223; Id., 27 S. C., 560; 4 S. E., 145. *Fisher v. Fair,* 34 S. C., 209; 13 S. E., 470; 14 L. R. A., 333. *Kershaw v. Burns,* 91 S. C., 131; 74 S. E., 378.

If, then, the acquisition of an easement of right of way, of necessity, is not affected by the Constitution of 1895, the legal requirements of such an easement, generally recognized should be considered. They are as follows:

(1) *Unity of title.* By this is meant that, in order to establish a way of necessity, the owner of the dominant estate (in this case, Belmont), must show that his land and that of the owner of the servient estate (Mulberry) once belonged to the same person. *Trump v. McDonnell,* 120

Ala., 200; 24 So., 353. *Insurance Co. v. Patterson*, 103 Ind., 582; 2 N. E., 188; 53 Am. Rep., 550. *Roper Lumber Co. v. Cedar Works*, 158 N. C., 161; 73 S. E., 902. *Ellis v. Forest Ass'n*, 69 N. H., 385; 41 A., 856; 42 L. R. A., 570. *Smith v. Coke Co.*, 143 Va., 159; 129 S. E., 274. *Tracy v. Atherton*, 35 Vt., 52; 82 Am. Dec., 621. *Lumber Co. v. Morris*, 33 Wash., 490; 74 P., 681; 63 L. R. A., 820; 99 Am. St. Rep., 964. *Lawton v. Rivers*, 2 McCord, 446; 13 Am. Dec., 741. *Turnbull v. Rivers*, 3 McCord, 133; 15 Am. Dec., 622. *Screven v. Gregorie*, 8 Rich. Law, 163; 64 Am. Dec., 747. *Crosland v. Rogers*, 32 S. C., 133; 10 S. E., 874.

There is no question or contention in the case at bar that the dominant estate (Belmont) and the servient estate (Mulberry) were not originally owned by the same person, General Chestnut.

(2) *Severance of title.* There is no question but that in 1869 the title to the whole tract was severed by conveyance of a part to the predecessor in title of the plaintiff and of a part to the predecessor in title to the defendant; they both claim, from a common source, different parts of the integral tract, which necessarily assumes a severance.

(3) *Necessity.* The rule is generally adopted in the American Courts that an essential requirement of a *way of necessity* is that it must be "necessary" to the enjoyment of the dominant estate. The difficulty lies in determining what degree of "necessity" is required to meet the requirements of the rule.

It is believed that the great weight of modern authority supports the view that, while the necessity must be actual, real, and reasonable, as distinguished from inconvenience, it need not be an "absolute and irresistible necessity." *Stone v. Burkhead*, 160 Ky., 47; 169 S. W., 489. *Fisheries Co. v. Tolman*, 210 Mass., 402; 97 N. E., 54; 38 L. R. A. (N. S.), 882. *Kelly v. Dunning*, 43 N. J. Eq., 62; 10 A., 276. *Jones v. Bethel*, 20 Ohio App., 442;

152 N. E., 734. *Muse v. Gish,* 114 Va., 90; 75 S. E., 764. *Goodall v. Godfrey,* 53 Vt., 219; 38 Am. Rep., 671. *Crotty v. Coal Co.,* 72 W. Va., 68; 78 S. E., 233; 46 L. R. A. (N. S.), 156. *Lawton v. Rivers,* 2 McCord, 446; 13 Am. Dec., 741. *Turnbull v. Rivers,* 3 McCord, 139; 15 Am. Dec., 622. *Screven v. Gregorie,* 8 Rich. Law, 163; 64 Am. Dec., 747. *Crosland v. Rogers,* 32 S. C., 133; 10 S. E., 874. *Bailey v. Gray,* 53 S. C., 513; 31 S. E., 354.

In the case of *Lawton v. Rivers,* 2 McCord, 446; 13 Am. Dec., 741, the learned justice thus states the meaning of the word "necessity" in such cases as follows:

"I do not mean to say that there must be an *absolute* and *irresistible necessity;* an inconvenience may be so great as to amount to that kind of necessity which the law requires, and it is difficult and perhaps impossible to lay down with exact precision the degree of inconvenience which would be required to constitute a legal necessity."

This language is quoted with approval by the Court in the case of *Screven v. Gregorie,* 8 Rich. Law, 163; 64 Am. Dec., 747, and also in the much later case (1898) of *Bailey v. Gray,* 53 S. C., 513; 31 S. E., 354.

Mr. Justice Hydrick also in his dissenting opinion in the case of *Slater v. Price,* 96 S. C., 260; 80 S. E., 376, declares that the word "necessary" meant that there "could be no other reasonable mode of enjoying the dominant tenement without this easement."

The following from 10 A. E. Enc. L., 420, is quoted by Justice Hydrick in his dissenting opinion in the case of *Slater v. Price,* 96 S. C., 260; 80 S. E., 376:

"According to the established English doctrine, which is supported by some of the later American authorities, if the owner of both the *quasi* dominant and the *quasi* servient tenements conveys the former, reserving the latter, all such continuous and apparent *quasi* easements as are reasonably necessary to the enjoyment of the property granted pass to the grantee, giving rise to easements by implied grant. If,

on the other hand, the *quasi* servient tenement is granted, while the *quasi* dominant tenement is retained, no easement is reserved by implication, *unless it is strictly* (italics added) necessary to the enjoyment of the property retained. These rules are founded on the principle that a grantor shall not derogate from his own grant."

The case of *Elliott v. Rhett,* 5 Rich. Law, 405; 52 Am. Dec., 750, is cited as sustaining the text.

So it is evident that, in determining the degree of necessity to establish such an easement, a marked distinction is made between a case in which the *grantor* is claiming the easement over the land conveyed, as being expressly or impliedly reserved to him, and a case in which the *grantee* is claiming the easement over the land remaining in the title of the *grantor.* Under the cases cited, particularly *Crosland v. Rogers,* 32 S. C., 130; 10 S. E., 874, it is held that it is *less difficult* for the plaintiff in the circumstances last stated to establish his easement of necessity than for the plaintiff in the circumstances first stated, for in that event the plaintiff would be claiming in derogation of his own grant, while in the other the grantor will be presumed to have granted that without which the land conveyed by him could not be enjoyed.

It has been held that all the claimant under these circumstances is obliged to show is the *necessity.* In *Lawton v. Rivers,* 2 McCord, 445; 13 Am. Dec., 741, the Court said:

"To establish such right, nothing is required but to show the necessity. Neither time nor occupation are necessary. If the necessity has existed but for a day, the claim is as well founded as where it has existed for half a century; and although the right may never have been enjoyed, yet its existence will be coextensive with the necessity."

Applying these principles to the testimony adduced, the question is whether or not there was any admissible and relevant testimony offered in support of the legal requirements of *necessity* as involved in such

rights of way, and in support of the *location* of the way as found by the jury.

It, of course, must be remembered, in a review of a judicial ruling refusing a motion for a directed verdict, that the question does not involve a determination of the *weight* of the evidence, but only whether there is any *admissible* and *relevant* testimony of *substantial probative value,* tending to establish the essential allegations of the complaint; and, in determining this question, it is elementary that the testimony must be considered most favorably to the party against whom the verdict is sought to be directed. We are not, therefore, so much concerned, for the purpose of this appeal, with what the witnesses for the defendants may have testified, if the evidence adduced by the parties presents a *conflict* in material phases.

The first matter of inquiry is whether any reasonable method of ingress and egress to the Belmont plantation was furnished by the 7-mile loop or horseshoe bend of the Wateree River, which inclosed the land on three sides.

The plaintiff. testified that the uniform flow in width of this river around this loop was about *600 feet;* that the river was at this point subject to freshets; that its depth was from "3 to 4 feet up to 20 feet"; that it is all low land, and about "5 in 8 acres" is real swamp land, low and marshy; that the banks are "cliffy" and dry, except where cut by canals; that this condition prevails the entire length of the loop, and it cannot at any point be crossed by foot, vehicle, or otherwise, except by bridge or ferry.

Mr. J. L. Gettys, a witness for the defendants, and upon whose testimony considerable stress is laid by them, testified that the only way to go from Belmont to the Charleston road, the road which the plaintiff was endeavoring to establish, "with any convenience at all, is to go up through this loop." The reference, of course, is to the narrow part of the tract, that is, between the heel points of the imaginary horseshoe.

Again this witness testified as follows:

"Q. As matter of fact—you know the situation; you know the place; you know the plantation; as matter of fact, for farming purposes, purpose of running the place as it has been used and is capable of being used, it couldn't be operated at all, as matter of fact, unless there was some opening to get out between those two points at which the river begins to turn around? A. Not unless you cross in a ferry from some other side,"

—and to cross in this manner, the witness further testified, "would be taking you away from town, and all other towns."

It is contended by the appellants that three sides of the plaintiff's land, Belmont, are bounded by the Wateree River, a navigable stream, and that for that reason, by reason of access thereby afforded, the claim of necessity, as in *Bailey v. Gray,* 53 S. C., 513; 31 S. E., 354, is annihilated. It may be true that the river is navigable, and yet it may present a barrier to the enjoyment of the premises embraced therein, for in order to use such stream to any advantage, the plaintiff would have to cross the same, or to emerge at some point from its waters on its banks. The fact that a stream has the legal status of navigability is not conclusive of this physical possibility, for the obvious reason that it might be capable of floating the largest vessels in service on its waters, and yet be held within banks that were so high, precipitous, or adjacent to land so low, marshy, cut with canals, and filled with poools and lakes, as to make it practically impossible to cross the stream or to emerge therefrom at a point nearer than the ocean in which it empties.

Besides, conceding for the sake of argument, that the river was navigable at this point, would this fact not increase the difficulty of the plaintiff, if he were forced to resort to the crossing of this river as a means of ingress and egress, for the reason that he would have no legal right to obstruct the stream in any way by bridge or ferry, under the Constitution of this state. He could not deal with

the stream as a private owner, nor could adjoining landowners across the river assist him, if so inclined. And, as the land on the other banks is owned by other people, he would have no right to make a landing thereon or in any way use that property either for the purpose of a bridge or ferry, even if he could so use the stream.

It certainly will not be contended that, by using boats of any kind in the navigation of this stream, he would be able to reach the Charleston road. The Court will take judicial notice of the existence and course of the Wateree River, and there is, and could be, no contention, under the facts, that such road would be accessible by navigating this stream.

The case of *Bailey v. Gray, supra,* is relied upon to sustain the appellants' contention in this particular, but it is difficult to conceive how that case can add materially to the strength thereof, inasmuch as it appears in that case that the plaintiff's premises, a small town lot in the city of Laurens, in connection with which the easement was claimed, was open on *two sides* to *public streets.* It could not, therefore, as the Court held, be claimed as a necessity, and the position that the plaintiff was entitled to an entry on his lot from the *south* as well as the *north* and *east* was a matter of mere *convenience.* Moreover, the question of necessity was one of fact submitted to the jury, which has by its verdict decided against the contention of the defendant upon this point.

It is therefore perfectly obvious that, if the right of ingress and egress is to be given to the plaintiff on the ground of *necessity,* it must be exercised *somewhere* on the line between the two points of the river's approach after making the bend around the three sides of the Belmont plantation, such line being a part of the western boundary of Mulberry and what has been referred to as the Deas or Barnes place, now owned by Zeigler, and the eastern boundary of Belmont.

It appears by the plat that the distance from one heel point of the horseshoe to the other is about 3,650 feet, practically seven-tenths of a mile. The dividing line there between Mulberry and Belmont is 1,613 feet, approximately three-tenths of a mile; the remainder of the line, four-sevenths of a mile, is the dividing line between Belmont and the Deas and Barnes lands. The defendant's contention is that there is, and has been for years, a road laid out from Belmont, crossing the four-sevenths of a mile line between Belmont and the Deas and Barnes lands, known as the Gettys road or Gettys-Powell road, either or both of which supply the plaintiff with access to the Charleston road, again annihilating the claim of necessity by the road claimed by the plaintiff.

Both the Gettys road and the Gettys-Powell road are described in an earlier part of this opinion. Of the Powell road, Mr. Gettys testified that it has been open ever since he knew it, and was partly through open and partly through woodland, and was used to get into the Deas place, which was to the south of Mulberry. It was really a southern branch of the Gettys road.

The exceedingly brief history of the Gettys road, the possibility of which alone, or in connection with the Powell road, the defendants contend should overthrow the *necessity* for the one claimed by the plaintiff, is told by Mr. J. L. Gettys in few words. He testified that it was on the line between the Deas and Mulberry tracts, and led from the lowest point at which you can get out in coming through the neck of the river's bend to the Charleston road; that it was given by General Chestnut, "as matter of necessity," for the benefit of "those who *worked* Belmont plantation," and there was "no other reason why it should be given," except "to get in and out" of Belmont, "to carry on their farm operations," and "to transact whatever business they had to transact in the course of the year."

Mr. W. E. De Loach, witness for defendants, testified, "You had to get out somewhere. Your place was nearly completely surrounded by water, and you had to come out in that neck *somewhere"*; also knew the place all his life, and *"never saw anybody travel the Gettys road at all."*

Mr. Gettys also testified that he completed the construction of this road, and used it only *"about a year,"* and thereafter wholly abandoned it, after a freshet washed away the bridge. He never attempted to use it again, and this fact alone furnished sufficient evidence to go to the jury on the question of the utter impracticability of such route, in view of the fact that the river was subject to frequent freshets.

At the point where the old Gettys road entered the Charleston road, the testimony now shows that a ditch has been cut between the line of Mulberry and the Zeigler or Barnes land, and this ditch is used for drainage purposes in connection with the operation of a brick company.

Conceding, for the sake of argument, that General Chestnut gave this Gettys way, the mere fact that he gave it, and for the reasons just stated as testified to by Mr. Gettys, is an admission of the absolute necessity of some way of ingress and egress from the Belmont place *other than across any part of the loop of the Wateree River.* If this be true, the way had to be given through the neck of the loop. It certainly will not be seriously controverted, as a matter of law, that, if such way was *necessary,* the fact that General Chestnut merely selected the location of a right of way could not make the failure of the exercise thereof at an impracticable point destructive of the right, preclude the assertion thereof, or the future exercise thereof dependent upon his will, pleasure, or permission at some other point which was practicable.

Assuming that the owner of the servient estate has the right of selection, he must exercise it in a reasonable way, having due regard to the interests and rights of the claimant, and to select an impracticable or impossible route would virtually deny the right, in which event the claimant would have the right to select the way, having due regard to the interest and rights of both parties. 9 R. C. L., 791.

*Permission* by the owner of the servient estate might have a material bearing in the assertion of the prescriptive right, but is of no legal significance whatever in an effort to establish a right of *necessity.*

It is, then, too plain to be seriously questioned in justice, and certain under the decisions, if this route alleged to have been selected, in plain recognition of the *necessity,* proved a dismal failure, the owner of the dominant tenement was still entitled to a way of necessity *somewhere else,* for the obvious reason, as stated, that the impossibility of the exercise of the recognized right at one point did *not* destroy its existence at another at which it could be exercised. If the Gettys route was impracticable, then you could go no further south, as the testimony is that this route was at the lowest point.

Was Mr. Gettys warranted in his abandonment of this particular route? The testimony of Dr. Brasington in reference to the location of this Gettys road, as he understood it, although, if such road existed, he had never known of it, was that nothing but "ravines and valleys" existed there, and that "everything washed away"; that there was a "canal" across there; that there are "lakes or pools" in this vicinity, some "12 or 14 feet" deep, caused by the action of the water, etc.

The witness, W. F. Russell, Jr., thoroughly familiar with this situation, as he had worked this land, testified that

"this (Gettys) road could be fixed by spending *twice the worth of the plantation."*

If, then, this original Gettys route is wholly impracticable, and the owner of the dominant estate, plaintiff, is entitled to a way of necessity through the servient estate, where should it be located? Why should not the Brasington route meet the requirements? The question is one largely of *location,* and must be determined by the jury under proper instructions. There was ample testimony to be submitted to the jury on this question in the case.

Mr. J. L. Gettys himself testified that, when he abandoned the original Gettys road for the reason stated, he used a way from Belmont to the Charleston road that "ran pretty close to the Brasington road." He was asked this question by Mr. Robinson:

"Now, I ask you again whether the road that was shown to you last year, which has been recently cut out, as the Brasington road, whether it is the road you traveled going out from the overseer's house or not?"

To this he answered:

"It is a *little* too much to the right. The road was more to the left, *but it ran pretty close to that*—was not *very far from it."*

The defendant, Mr. D. R. Williams, testified on the cross examination that:

"There has been a (field) road practically on the route claimed by Dr. Brasington, from the dam (constructed as levee at the neck) up to the quarter (between the neck and Charleston road) since about 1885," and that the "ends of the road claimed by Dr. Brasington and the old quarter road are *practically the same as the Charleston road;* and at the *quarter* it is *practically the same,* just as it *enters each one.* The roads are practically identical at each end," —and come as close together, at the nearest point, as the width of the court house, or maybe less. He also testified

that the road from the quarter to the Charleston road had probably been in existence *150 years.*

So we have from the defendant's own showing that, at a *point* on the *Charleston road,* which the plaintiff claims as junction point of his way of necessity with this public highway, a road probably in existence 150 years; that at an intermediate point (the quarter) another identity of *location,* and from this point the *remainder of the distance* a "field road," substantially identical with the road claimed by Dr. Brasington in existence *38 years* (since 1885).

In addition to this, to which the testimony just referred to is also pertinent, the plaintiff offered testimony to show that the route claimed by him had been in *continuous and uninterrupted* use for a period ranging from *23 years to 57 years,* the latter testimony by the widow of Mr. Barnes who owned what is referred to in the record as the Barnes tract.

In the discussion of this particular way, however, it must not be overlooked that the requirements of *identity* in route, while an essential requirement in the establishment of the prescriptive right, does not enter as such in a way of necessity. Neither is *possession* for any length of time necessary, as we have shown above, quoting the language of the learned Justice Nott. The only question to be determined by the jury in such cases, unless the testimony admits of but a single reasonable inference, is: (1) Whether the necessity for the way exists under a proper instruction on the legal requirements of such a way; (2) the location of the way under the contentions made and the testimony offered.

It is submitted that in this case the contention of the defendants left the jury, practically, to determine between the Gettys and Brasington routes, and, as there was abundant testimony to show the utter impracticability of the former

and the necessity of the latter, of course, the question was properly submitted to the jury.

"Changing a road between any two given points merely for the purpose of straightening a fence, or for the convenience of the parties, so that the way is still kept open from one place to the other, I should not consider as destroying its identity." *Lawton v. Rivers,* 2 McCord, 445; 13 Am. Dec., 741.

"And where either one of these classes of easements is claimed in a complaint, and there is testimony relevant to the issue as claimed—that is, tending to show the truth of the facts upon which the easement is claimed—the case should go to the jury; otherwise, in the absence of testimony as to the one or more of these facts, a nonsuit should be ordered." *Crosland v. Rogers,* 32 S. C., 132; 10 S. E., 874.

While I think that the foregoing in reference to the acquisition of the easement as of necessity is conclusive of the correctness of his Honor's ruling upon the motion for a directed verdict, and for that reason have not discussed the matter of prescription, I think that there was abundant evidence upon that issue to warrant a submission of the case to the jury.

For these reasons, I think that the judgment of the Circuit Court should be affirmed.

A majority of the Court concurring in the opinion, it becomes the judgment thereof.

MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. CHIEF JUSTICE WATTS (dissenting) : This was an action commenced January 20, 1923, by issuance of summons and complaint, together with an order to show cause and temporary restraining order. The action was brought for the purpose of enjoining and restraining the defendants from interfering with, or obstructing, a right of way claimed

by plaintiff as leading through the lands of defendant, Ellen M. Williams, known as Mulberry, to a farm owned by the plaintiff, known as Belmont. A temporary injunction was issued at the time of the commencement of the action, and was subsequently continued until the hearing on the merits.

The case was tried before his Honor, M. L. Bonham, and a jury on the 19th, 20th, and 21st days of March, 1924, and resulted in a verdict for the plaintiff for $1 damages, upon which judgment was entered for said damages, and for a permanent injunction.                    •

The exceptions, eight in number, raise these questions as stated by the appellants' attorneys in their argument:

This case presents two principal questions:

I. Way of Necessity. (1) Are there any facts in the case from which such a way can be found? (2) Can such a way exist under the Constitution and laws? (3) The effect of the order of Judge Townsend, sustaining the demurrer as to the third cause of action, relating to right of way of necessity.

II. Way by Prescription. (1) Is there any evidence which could reasonably be submitted to the jury that plaintiff had shown a right of way *as appurtenant to his land* by prescription? (2) Rules of Law. There were motions by defendant for a directed verdict on all the issues, and these motions were overruled.

Under the Constitution of 1895 the respondent could not condemn the property and acquire an outlet that way. Constitution of 1895, Art. 1, § 17:

"Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor."

When Chestnut sold the property in 1869, there was a road established leading out of "Belmont" and along the dividing line between "Mulberry" and lands south of one road going straight on out to the Camden road at a rock

corner known as the "Gettys road," the other forking off
from the Gettys road, and going out to the Camden road
through what is known as the Powell settlement, reaching
the Camden road at a point further south than the original
Gettys road, and this latter being known as the "Powell
road." These roads were accepted and used as an outlet by
the purchaser in 1869, and the appellants concede that the
respondent has the road as an outlet, and not the one he
now claims.

Chief Justice McIver, in *Bailey v. Gray,* 53 S. C., 513;
31 S. E., 357, lays down the rule thus:

"But the plaintiffs contend that the allegations contained
in the X, XII, and XIII paragraphs of their complaint are
sufficient to constitute a cause of action. These allegations
are long and detailed, and need not be set forth *in hæc
verba,* as they can be seen by reference to the copy of the
complaint, which will be incorporated in the report of this
case. It is sufficient to say here, that, as we understand it,
these allegations are intended to show that the plaintiffs
are entitled to the easement which they claim: 1st. From
necessity. 2nd. By prescription. Inasmuch as it appears
in the complaint that plaintiffs' premises are open, on two
sides, to the public streets of Laurens, we do not see how
it is possible to base the claim of easement upon necessity.
The fact that it would be very convenient for plaintiffs to
have access to their lot from the south side as well as from
the public streets on the north and east of their lot, does not
constitute that *'imperious necessity'* as it is called in some
of the books, which is necessary to constitute a right of
way by necessity. As is said by Nott, J., in *Lawton v.
Rivers,* 2 McCord, at page 448 [13 Am. Dec., 741], 'there
must be an actual necessity, and not a mere inconvenience,
to entitle a person to such a right.' It is true, that the dis-
tinguished Judge goes on to say that there need not be an
absolute and irresistible necessity; an inconvenience may be

so great as to amount to that kind of necessity which the law requires, and it is difficult and perhaps impossible to lay down with exact precision the degree of inconvenience which will be required to constitute a legal necessity.' But he proceeds to show that, as the plaintiff in that case had access to the public road by a navigable water course flowing in front of his door, there was no legal necessity which entitled him to claim a right of way, by land, through his neighbor's premises. So, here we say that as the plaintiffs had access to their lot from the public streets on two sides, there was no legal necessity that he should have access from the south side."

See, also, *Seabrook v. King,* 1 Nott & McCord, 140; *Screven v. Gregorie,* 8 Rich. Law, 158; 64 Am. Dec., 747.

The respondent has not made out a case of necessity in this case, his land is on a navigable river, and there is a way of ingress and egress between Mulberry and the adjoining land known as the Deas tract. It may be more convenient to have a right of way across the lands of appellants, but certainly there is no necessity as the law recognizes. *Lawton v. Rivers,* 2 McCord, 447; 13 Am. Dec., 741. *Turnbull v. Rivers,* 3 McCord, 139; 15 Am. Dec., 622. *Jeter v. Mann,* 2 Hill, 641. *Bailey v. Gray, supra.* The law in regard to the right of way by prescription is:

(1) Continuous, Adverse, Identical.—Prescription presupposes a grant which has been lost, and is based upon continuous user as of right (adverse) of the identical way, for a period of 20 years, which user and length of time raises the presumption of a grant. *Williamson v. Abbott,* 107 S. C., 400, 401; 93 S. E., 15. *Lawton v. Rivers,* 2 McCord, 449, 450, 451, 452; 13 Am. Dec., 741. *Turnbull v. Rivers,* 3 McCord, 138, 139; 15 Am. Dec., 622. *Bailey v. Gray,* 53 S. C., 514, 515, 516; 31 S. E., 354. *Craven v. Rose,* 3 S. C., 75, 77. *Kirby v. Southern Railway,* 63 S. C., 503; 41 S. E., 765. *Frady v. Ivester,* 118 S. C., 205; 110 S. E.,

135.  *Ousts v. McKnight,* 114 S. C., 306; 103 S. E., 561. *Metz v. Metz,* 48 S. C., 486; 26 S. E., 793.

Mr. Justice Hydrick, in the *Williamson case,* above, thus lays down the doctrine:

"To establish a right by prescription, it is necessary to prove three things:  (1) The continued and uninterrupted use or enjoyment of the right for the full period of 20 years;  (2) the identity of the thing enjoyed; (3) that the use or enjoyment was adverse, or under claim of right.  *Lawton v. Rivers,* 2 McCord, 445; 13 Am. Dec., 741.  *Bailey v. Gray,* 53 S. C., 503; 31 S. E., 354. While it is true that, when it appears that claimant has enjoyed an easement openly, notoriously, continuously, and uninterruptedly, in derogation of another's rights, for the full period of 20 years, the use will be presumed to have been adverse, so as to cast upon the owner of the servient estate the burden of rebutting the presumption (*Chalk v. McAlily,* 11 Rich. Law, 153), that rule does not apply when claimant's own testimony shows that the use was permissive in its inception.

" 'It is the well-settled rule that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking, if permissive in its inception, such permissive character·will continue of the same nature, and no adverse user can arise, until there is a distinct and positive assertion of a right hostile to the owner, and brought home to him.'  9 R. C. L., 778.

"As heretofore stated, the testimony offered by the plaintiff shows that the use was permissive in its origin, and there is no evidence of any distinct and positive assertion of a right hostile to the owner, until it was made by plaintiff in 1908.

"The Court instructed the jury that the permission relied upon to defeat the easement claimed must have been given by the owner of the servient estate, or by some one duly authorized by him to give such permission. This was error. The asking and obtaining of permission, whether from the tenant or owner of the servient estate, stamps the character of the use as not having been adverse, or under claim of right, and, therefore, as lacking that essential element which was necessary for it to ripen into a right prescription. The question is not whether Mrs. Marco was bound by the permission given by her tenant, but it is whether the use of the ditch on her land was claimed and enjoyed as a right, or as a favor."

There is overwhelming testimony that the outlet road was used permissively in the beginning:

"It is not necessary to show that the user was, during the period of prescription, the subject of controversy between the parties; on the contrary, it is said in *Lawton v. Rivers* [2 McCord, 445; 13 Am. Dec., 741] on the authority of Lord Coke, that it must be shown to be peaceable. It is enough, if the user of the way cannot be reconciled with the right of the owner of the land otherwise than by supposing a license or grant, and in that case, if sufficient time has elapsed, the law presumes a grant. It was requisite, therefore, to a verdict for the plaintiff, that it should appear that the right of way claimed by him was adverse to the right of the defendant in the sense above stated." *Craven v. Rose,* 3 S. C., 75.

And again at page 77:

"The fact of interference, on the part of the plaintiff, with the lane, might be of importance, had that interference changed the identity of the way so that plaintiff could not make claim to the same way for the whole period of twenty years (*Lawton v. Rivers,* 2 McCord, 445 [13 Am. Dec., 741]), but the interference complained of is of an entirely different character."

(2) Permissive Possession Cannot Ripen into a Right—
*Williamson v. Abbott, supra; Golding v. Williams,* Dud.,
94. *Sims v. Davis & Tygart,* Cheves, 1; 34 Am. Dec.,
581. *Civil v. Toomey,* 103 S. C., 460; 88 S. E., 261. *Frady
v. Ivester,* 118 S. C., 205; 110 S. E., 135. *State v. Murphy,*
124 S. C., 279; 117 S. E., 529 (2); 9 R. C. L., p. 778, §
37. "But a mere courtesy can never grow into a right."
*Witter v. Harvey* (1821) 1 McCord, 72; 10 Am. Dec., 650.
*Hutto v. Tindall* (1853), 6 Rich. Law, 403.

Right of way by prescription cannot be claimed, because ·
undisputed testimony shows user of road began by permis-
sion, and there is no testimony tending to show any change
in the character of the user, or that the defendant had notice
of any change.

(3) Adverse Possession or User Must be 20 Years.—
*State v. Gregg,* 2 Hill, 389. *Jeter v. Mann,* 2 Hill, 642;
643. *Hutto v. Tindall,* 6 Rich. Law, 400, and cases above.
"It is somewhat difficult to perceive how the plaintiff, as the
grantee of Hutchinson's (Gettys' and then Witte's here)
title, could assert a right to possession which was not in
Hutchinson (Gettys or Witte) from whom he derived [it]."
*Wilson v. So. Ry.,* 123 S. C., 399; 115 S. E., 764 (8). *A.
C. L. v. Searson,* Opinion filed November 9, 1926, 137 S.
C., 468; 135 S. E., 567. *Williamson v. Abbott,* 107 S. C.,
401; 93 S. E., 15.

(7) Continuous.—"It has been said that, if there be one
element more distinctly material than another in conferring
title by adverse possession, where all requisites are so, it is
the existence ·of a continuous adverse possession. There
must be such continuity of possession as will furnish a cause
of action for every day during the whole period required to
perfect title by adverse possession." *Cathcart v. Matthews,*
105 S. C., 340; 89 S. E., 1021. *Hill v. Saunders,* 6 Rich.
Law, 67.; 68. *Sims v. Davis & Tygart,* Cheves, 4; 34 Am.
Dec., 581. *Glenn v. Walker,* 113 S. C., 9; 100 S. E., 706.
*Clary v. Bonnett,* 114 S. C., 452; 103 S. E., 779. *Ouzts v.*

*McKnight,* 114 S. C., 306; 103 S. E., 561. *Frady v. Ivester, supra. Watt v. Trapp,* 2 Rich. Law, 136; 9 R. C. L., p. 777, § 36.

And in *Clary v. Bonnett,* Mr. Justice Hydrick says:

"There can be no constructive adverse possession of land against the owner, where there has been no actual possession which he could treat as a trespass and bring action for."

And in *Ouzts v. McKnight,* Mr. Justice Gage says:

"Adverse possession is hostile  *  *  *  and hostile possession  *  *  *  with intention to dispossess the owner."

And in *Watt v. Trapp* the Court says:

"To give rise to a prescription, the use must be continuous, and it cannot be pretended that a use, with an interval of at least five years, is anything like continuous."

There is no doubt that the respondent was a tenant on the Mulberry plantation continuously from 1901 to 1923. The plaintiff, under the evidence and the law applicable to the facts of the case, has failed to make out his case, and his Honor was in error in not directing a verdict for the defendants as asked for.

The judgment of the Circuit Court should be reversed, and the case remanded for the purpose of entering up judgment for the defendants under Rule 27 of this Court.