## Staunton.

### MORGAN T. SMITH v. VIRGINIA IRON, COAL AND COKE COMPANY AND M. C. JACKSON.

September 17, 1925.

1. PRIVATE WAYS—*Way of Necessity—Land Granted Surrounded by Grantor's Land, or Partly by His Land and Partly by that of Another.*— Where one person grants land to another which is entirely surrounded by the grantor's land, or partly by the land of the grantor and partly by the land of a third party, the law, even though the deed be silent on that subject, implies a grant of a right of way of necessity across the lands of the grantor to the public highway. The right of way thus acquired remains vested in the grantee and his successors in title so long as the necessity therefor continues to exist. The reason for the rule is that such a right is necessary to the use and enjoyment of the land conveyed.

2. PRIVATE WAYS—*Way of Necessity—Dominant and Servient Estates Must Once Have Belonged to the Same Person.*—In order to establish a way of necessity, it is incumbent upon the owner of the dominant estate to show that his land and that of the owner of the servient estate once belonged to the same person. There cannot be a way of necessity over the land of a stranger to the title.

3. PRIVATE WAYS—*Way of Necessity—"Necessity."*—The "necessity" as applied to implied grants of rights of way, is not a physical or an absolute necessity, but a reasonable and practicable necessity.

4. PRIVATE WAYS—*Way of Necessity—"Necessity"—Case at Bar.*—In the instant case, a suit to enjoin defendant's use of a way over complainant's land, defendant claimed a way of necessity over the land. Defendant had acquired other adjacent lands through which access to the public road from the dominant estate might have been had, but the topography of the country was such that it was not reasonably possible for defendant to construct a wagon road over these lands, as the cost of construction would be more than the value of the timber to be hauled and the land on which it was located.

*Held:* That under these circumstances it could not be said that the necessity for the use of the right of way across the lands of the complainant had ceased to exist.

Appeal from a decree of the Circuit Court of Dickenson county. Decree for defendants. Plaintiff appeals.

*Affirmed.*

The opinion states the case.

*Chase & McCoy,* for the appellant.

*Lewis A. Nuckols, Napoleon Bond* and *F. A. Groseclose,* for the appellees.

West, J., delivered the opinion of the court.

Morgan T. Smith complains of a decree refusing to enjoin and restrain the Virginia Iron, Coal and Coke Company and M. C. Jackson from hauling over and across his certain tract of land situate on the open fork of McClure river, at the mouth of Birch Spring fork, in Dickenson county, Virginia.

Morgan T. Smith, and Virginia Iron, Coal and Coke Company and M. C. Jackson will be referred to as complainant and defendants, respectively, the same being their positions in the lower court.

It is agreed that all the lands involved in this controversy, which are owned by the complainant and the defendant, Virginia Iron, Coal and Coke Company, respectively, that lie south of Open Fork creek and *west* of Birch Spring Fork creek were originally parts of a larger tract of land owned by Moses L. McCoy; and that all of the lands which lie south of Open Fork creek and *east* of Birch Spring Fork creek were origi-

nally parts of a large tract that was formerly owned by William Kilgore, and that Moses L. McCoy and William Kilgore were the common, though not the immediate, grantors of Morgan T. Smith and Virginia Iron, Coal and Coke Company.

The tracts of land involved, belonging to Virginia Iron, Coal and Coke Company, derived from Moses L. McCoy, are as follows: Anna M. Meade 8.109 acre tract; J. A. Odle 12.966 acre tract; and W. C. Edwards 20.966 acre tract; and the Nancy E. Hay 118.864 acre tract. The only tract involved, owned by Morgan T. Smith, which came by mesne conveyance from Moses L. McCoy, is the Martha A. Turner twenty-five acre tract.

The tracts involved here, belonging to Virginia Iron, Coal and Coke Company, the titles to which originate in William Kilgore, are: The Anna Meade 14.-389 acre tract; the C. K. Counts 44.082 acre tract; and the Frank A. Austin 17.068 acre tract. The only tract here involved, owned by Morgan T. Smith, the title to which can be traced to William Kilgore, is the James T. Edwards and Elihu Kilgore twenty-five acre tract.

M. C. Jackson had entered into a contract with Virginia Iron, Coal and Coke Company to manufacture and remove the timber from its lands on the waters of Birch Spring Fork of the Open Fork of McClure creek (river) and deliver the lumber to the company at Tom's creek in Wise county, Virginia. Jackson moved his mill on the company's land and began the manufacture and delivery of the lumber accordingly. In order to reach the public road at the mouth of Birch Spring Fork, from the mill which was located near the head of that creek, it was necessary to cross the surface tract of land owned by Smith, under which the company owns the coal. The bill prayed for an injunction, to restrain the defendants from hauling

across this land. The injunction was refused and Smith was allowed an appeal from that decree.

The answer of the appellees, among other things, alleges that complainants' land "lies partly along and in Birch Spring Fork creek; that the land on either side is very steep and cannot be used as a road, without the expenditure of large sums of money, except that the bed of said creek, and the ground on both sides thereof and immediately adjoining thereto, is suitable for a roadway, and has been so used for such for many years last past as hereafter stated;" that the portion of appellants' land "lying to the *west* of Birch Spring Fork creek was formerly owned by Moses L. McCoy, and comprised a part of a tract of 600 acres owned by him, the remainder of which tract lies on said Birch Spring Fork creek;" that the Virginia Iron, Coal and Coke Company is the owner of about 300 acres of the surface of the said McCoy tract which lies above that portion of said tract owned by the complainant; that "there is no other means of ingress and egress or access to that portion of the said lands owned by the Virginia Iron, Coal and Coke Company which lies on the water shed of Birch Spring Fork creek, except by means of the road above referred to along Birch Spring Fork creek, through and over that portion of the land now owned by M. T. Smith; that this road across, over and through that portion of the Moses L. McCoy tract now owned by M. T. Smith has been used as a roadway for more than twenty-one years;" that M. T. Smith (appellant) had laid out the proposed town of "Haysville" on his land and designated a street thereon as "Birch street" and that Smith is now estopped to deny the dedication of this street, or to object to the use thereof by appellees; that appellee, the coal company, is also the owner of about seventy-six

acres of land lying on the *east* side of Birch Spring Fork, which was originally embraced in a larger tract known as the Elihu Kilgore tract, and that the coal company has no means of ingress, egress or access to this seventy-six acre tract except over appellant's land; that the coal company is entitled to a way over appellant's land from this seventy-six acre tract, by reason of the unity of title in said Kilgore; that the coal company is the owner of 160 acres of land on the watershed of Birch Spring Fork creek, and above the land of the appellant, which was a part of the 600 acre Moses L. McCoy tract, and that this tract has no means of ingress or egress or access except over the land of appellant and that appellees claim that they are entitled to an easement over appellant's land.

It is agreed that the only issue in the case is the *right* of the defendant, Virginia Iron, Coal and Coke Company, to the use of a wagon way across complainant's lands.

As there are two common sources of title, McCoy and Kilgore, appellees might claim two rights of way, but they are claiming only one. The way which is being used leads up Birch Spring Fork creek and has been fenced on both sides its entire length, through the land now owned by the complainant, for about thirty-four years.

The appellees claim that they are entitled to this right of way, (1) by prescription; (2) by necessity, and (3) by the right to use the proposed street called "Birch street."

If appellees have the legal right to use the way upon any one of these grounds, the injunction was properly refused.

We will consider first the defendant's claim to a right of way by necessity. This right must depend upon the law as applied to the facts in the case.

[1] Where one person grants land to another which is entirely surrounded by the grantor's land, or partly by the land of the grantor and partly by the land of a third party, the law, even though the deed be silent on that subject, implies a grant of a right of way of necessity across the lands of the grantor to the public highway. The right of way thus acquired remains vested in the grantee and his successors in title so long as the necessity therefor continues to exist. The reason for the rule is that such a right is necessary to the use and enjoyment of the land conveyed.

[2] In order to establish such a right of way, it is incumbent upon the owner of the dominant estate to show that his land and that of the owner of the servient estate once belonged to the same person, which is admitted in this case.

[3] The "necessity" as applied to implied grants of rights of way is not a physical or an absolute necessity but a reasonable and practicable necessity.

In Minor on Real Property, vol. 1, sec. 102, page 124, the law is stated thus: "Easements acquired by implied grant. The foundation principle upon which rests the creation of easements by implied grant is to be found in the maxim: '*Cuicunque aliquis quid concedit, concedere videtur et id sine quo res ipsa non potuit*,' meaning that a grant of land or other property carries with it, by implication, as incident thereto, everything reasonably necessary to the enjoyment of the thing granted, which it is in the power of the grantor to bestow."

At section 103, page 124, the same author also says: "*Easements by necessity.*—Easements are sometimes implied upon a grant of land, because without them the property granted could not be used by the grantee, or could not be used for the purpose for which it was

granted. Such easements are said to arise by necessity, that is, by necessary inference, since otherwise the whole grant would be nugatory.  *  *  *

"But the most usual and important of these easements is the right of way by necessity, which arises where one conveys to another land which is either entirely surrounded by the land of the grantor, or else is bordered in part by the land of a stranger and in part by the lands of the grantor. In either case the grantee of the land, even in the absence of express stipulations, has a way by necessity over the grantor's land, since otherwise the land granted to him would be unapproachable and useless. The grantor cannot take advantage of the absence of stipulations thus to derogate from his own grant."

And further it is said:

"It is a general rule governing ways by necessity, that in order to establish such a way it is essential that the alleged dominant and servient tenements should be proved at some time in the past to have belonged to the same person."

In 2 Ency. Digest Va. & W. Va. Rep., Cum. Supp., p. 677, we find this:

"*Meaning of necessity.*—The rule of a strict necessity applicable to an implied reservation or grant of an easement is not limited to one of absolute necessity, but to reasonable necessity as distinguished from mere convenience."

The West Virginia court, in *Miller* v. *Skaggs*, 79 W. Va. 645, 91 S. E. 536, Ann. Cas. 1918 D, 929, held: "In the textbooks and decided cases we are told that the easement to be passed or be retained by implication only must be necessary. There are different kinds of necessity. A thing may be necessary in the physical sense or in a practical or legal sense."

In 2 Ency. Digest Va. & W. Va. Rep., Cum. Supp., page 673, this is said: "Whether an owner of land can go back beyond the deed of the immediate grantee to the common source of title, however remote it may be, and claim a way by necessity, as appurtenant to the land, is a vital and far reaching question in the case. The authorities uniformly hold there must have been at some time privity of title. There cannot be a way of necessity over the land of a stranger to the title. * * * Mr. Sergeant Williams' Note 6 to *Pomfret* v. *Ricroft*, 1st Saund. 323, asserts the right to go back to unity of possession and title, however remote. It says, 'If the origin of a way of necessity cannot any longer be traced, but the way has been used without interruption, it must then be claimed as a way either by a grant or prescription, according to the circumstances of the case. Where the fact is, that there existed at one period an unity of possession, it must then be claimed as a way by grant.' The principle and conclusion intimated in this note have been embodied in actual decisions."

In Minor on Real Property, section 104, the author says: "The conditions under which the separation of the ownership occurs is immaterial. There may be successive transfers of the respective tracts, or the transfers may be simultaneous, as where the two are transferred to different persons by one devise, or one decree of partition, or of foreclosure."

[4] It is true, as contended, that Virginia Iron, Coal and Coke Company has acquired other adjacent lands which touch the Tom's Creek-Dante road on Sandy Ridge mountain, but the topography of the country is such that it is not reasonably possible for the company to construct a wagon road from that road to its lands on the Birch Spring Fork. There has never been

any road, other than the one down the Fork by which the properties on the Fork can be served.

It appears from the evidence, without contradiction, that the construction of a wagon road up the mountain to the Sandy Ridge road would be wholly impracticable, as the cost of construction would be more than the value of the timber to be hauled and the land on which it is located. Under such circumstances it cannot be said that the necessity for the use of the right of way across the lands of the complainant has ceased to exist.

The conclusion we have reached makes it unnecessary to consider the defendants' right to a way by prescription, or the right to use Birch street.

The court did not err in refusing to grant the injunction prayed for, and the decree complained of will be affirmed.

*Affirmed.*