## Richmond

SAMUEL H. THRASHER AND ALLEN S. THRASHER v.
HERBERT M. THRASHER, JR., ET AL.

March 9, 1970.

Record No. 7070.

Present, All the Justices.

*William C. Worthington (Williams, Worrell, Kelly & Worthington,* on brief), for appellants.

*Wayne Lustig,* for appellees.

COCHRAN, J., delivered the opinion of the court.

Herbert M. Thrasher, Jr. on October 29, 1964, filed his petition against Samuel H. Thrasher and Allen S. Thrasher in a pending chancery cause praying, among other things, that a voting trust agreement dated July 1, 1960, be declared invalid. The lower court, after hearing the evidence *ore tenus,* entered its decree on March 19, 1968, holding the voting trust agreement null and void for lack of delivery and failure to comply with the requirements of Code § 13.1-34.

For many years members of the Thrasher family have engaged in litigation over the operation of a large plant nursery business under the name of Greenbrier Farms. Each of five Thrasher brothers, Samuel, Guy, Herbert, Sr., Thomas and Roscoe owned 125 shares of

capital stock in the operating corporation, and the remaining 126 shares of outstanding stock were owned by the sixth brother, Allen. Any combination of the Allen Thrasher stock and that of two other brothers would produce voting control of the corporation.

The pending chancery cause had been instituted in 1957 by Herbert, Sr. and Guy Thrasher against Samuel and others for the purpose of forcing an accounting by Samuel and appointment of a receiver for Greenbrier Farms, Incorporated. A hearing was held in 1959 at which Samuel and Allen were represented by their attorneys, W. L. Parker, R. B. Spindle, III and T. L. Sawyer.

After this hearing Herbert, Sr. and his son Herbert, Jr. (Mackey) concluded that to remove Samuel from active management and appoint a receiver would result in liquidation of the business, with unfortunate consequences. They consulted W. L. Parker about their change of position. Herbert, Sr. then transferred his stock to Mackey who early in 1960 was substituted for his father in the receivership proceeding. Mackey proceeded to follow a course of cooperation with Samuel and Allen.

The alignment of Mackey with Samuel and Allen shifted the balance of power in the corporate struggle. Following conferences between the three attorneys it was decided that this voting control would be set forth in a voting trust agreement. Accordingly, such an agreement was prepared by Mr. Spindle which provided that for 10 years the stock of Samuel, Allen and Mackey in both the operating corporation and the family real estate holding corporation would be voted by them, or any two of them, as trustees.

The agreement dated July 1, 1960 was signed by Samuel, Allen, Allen's children who had acquired some of his stock, Mackey and Herbert, Sr. Mackey delivered the signed original to Mr. Parker, who placed it in his safe but later assured Mr. Spindle that all parties had signed and the agreement was a fact accomplished.

The voting powers specified in the voting trust agreement were promptly exercised. The stock was voted at meetings of stockholders "both ways", i.e. by the trustees and individually, but as a bloc. Samuel, Allen and Mackey and the three attorneys also began to negotiate from their new position of strength with the other parties to the litigation.

Over a period of months three agreements were negotiated for execution by all parties providing for the management of Greenbrier Farms and settlement of all matters in controversy in the receivership

litigation. Samuel, Allen and Mackey each signed these agreements "[i]ndividually and as Trustee under a voting trust." One of the agreements referred specifically to the "Voting Trust of Samuel H. Thrasher, Allen S. Thrasher and Herbert Maxwell Thrasher, Jr." It further contained a provision that "[t]he representatives [on the Board] of the Samuel H. Thrasher, Allen S. Thrasher and Herbert Maxwell Thrasher, Jr. families shall be selected pursuant to the voting trust of these shares . . ."

A decree, endorsed by counsel for all parties, was then tendered to the court and entered July 13, 1961. This decree, after reciting withdrawal of the prayer for appointment of a receiver, "ratified, confirmed and approved" the settlement agreements which were incoporated therein by reference.

The decree further provided that any party could apply for construction of the contracts and other relief including specific performance, and that the cause would be retained on the docket so that the court could supervise "performance of the agreements."

In his petition attacking the voting trust agreement Mackey alleges that he and his father signed it after being advised that by withholding delivery they could prevent its consummation. "The proposed voting trust agreement was then signed . . . and delivered to . . . their attorney, with the declared purpose . . . to conform their actions to the provisions thereof as long as Samuel H. Thrasher properly conducted the affairs of this corporation." Delivery to their attorney, Mr. Parker, was then made subject to the condition that he hold it until he was instructed to release it.

Mackey's testimony and that of Mr. Parker is that the executed voting trust agreement was to be held by Parker subject to further instructions from Herbert, Sr. Although Herbert, Sr. had previously transferred all his stock to Mackey there was an agreement between father and son concerning reservation of dividends. So Herbert, Sr. was made a party to the voting trust agreement.

At no time during the negotiations which culminated in the three settlement agreements approved by the decree of July 13, 1961, did Mackey or Mr. Parker ever suggest to Samuel or Allen or to the other attorneys representing them that the voting trust agreement was not valid and effective. In fact, Mr. Spindle was selected to act as spokesman for the Samuel-Allen-Mackey combination in negotiating conferences with attorneys representing other parties to the litigation.

Herbert, Sr. had died in December, 1960, without authorizing Mr. Parker to surrender the voting trust agreement. So when the settlement agreements were consummated the following July Mr. Parker did not consider that the voting trust agreement could be made effective. But he "was willing to live with it" as long as he felt "it was consistent with the interests of all concerned."

These doubts and reservations were not communicated to his other clients, Samuel and Allen, or to the attorneys with whom he was associated in representing them. Mr. Parker testified that he could not disclose the restrictions imposed upon him by Herbert, Sr. and Mackey because to have done so would have betrayed his clients' trust. Nevertheless, he continued his joint representation of Samuel and Allen until 1963 or 1964. Indeed, the July 13, 1961 decree was endorsed by Parker, Spindle and Sawyer as counsel for Samuel, Allen and Mackey, as well as for various other parties such as the operating and real estate holding corporations.

Mackey also contends that the voting trust agreement is invalid because the applicable statutory requirements were not met. The evidence is undisputed that the original was not filed in the registered office of the corporation and the stock was not transferred to the voting trustees as required by Code § 13.1-34.

Samuel and Allen contend that Mackey is estopped from asserting that the voting trust agreement is invalid. They also take the position that as between the parties compliance with statutory requirements is not necessary and that the agreement is valid.

The lower court held that there was no estoppel, that it had not passed upon the validity of the voting trust agreement in the decree of July 13, 1961, and that the agreement, having remained in the constructive possession of Herbert, Sr. and not having met the statutory requirements, was void.

There is no material conflict in the evidence. It clearly shows that Mackey, in signing the settlement agreements approved by the decree of July 13, 1961, held himself out to be acting under a valid voting trust. His actions were intended to lead and did lead Samuel and Allen to believe that all three were acting together as trustees under a valid agreement. Mackey's undisclosed intent to conform to the voting trust agreement only so long as he approved of Samuel's conduct was a well kept secret. Other stockholders objected to the voting trust but Mackey never did nor did he ever challenge its validity until he filed his petition in 1964.

We have had recent occasion to reaffirm the principle that a party cannot assume positions which are inconsistent with each other and mutually contradictory. *McLaughlin* v. *Gholson*, 210 Va. 498, 171 S. E. 2d 816 (1970). In that case we declined to permit a litigant "to change his position to the prejudice of his adversaries in contravention of [a] stipulation freely entered into."

Application of this principle is not restricted to litigation. A party "either in the course of litigation . . . or in dealings *in pais*" is estopped from taking inconsistent positions. *Burch* v. *Grace Street Bldg. Corp.*, 168 Va. 329, 340, 191 S. E. 672 (1937).

Having signed the 1961 settlement agreements based upon a valid voting trust, and having had his attorney ask the court to enter the decree approving these agreements, Mackey will not now be permitted to reverse his position by denying the validity of the voting trust agreement.

> "A rule denying litigants the right to play fast and loose with courts should be maintained. . . . The rule as here employed may not be strictly regarded as one of estoppel but rather in the nature of a positive rule of procedure . . . ". *Rohanna* v. *Vazzana*, 196 Va. 549, 553, 84 S. E. 2d 440, 441 (1954).

It is true that the lower court was not asked to rule on the validity of the voting trust agreement in its decree of July 13, 1961. But the decree was tendered with settlement agreements attached, for entry as a decree disposing in principle of all matters in litigation except the accounting question. In effect, the litigants and their attorneys were stipulating the settlement of litigation and representing to the court that settlement had been reached in accordance with all agreements specified, including the voting trust agreement. Mackey may no more contest the voting trust agreement than he may challenge the validity of the three settlement agreements expressly incorporated in the decree.

In view of our holding it becomes unnecessary to consider whether as between the parties compliance with all statutory requirements is necessary to make the voting trust agreement valid and enforceable.

We are asked by appellees to hold that Samuel and Allen Thrasher should not be permitted to serve as voting trustees because of alleged misdoings of Samuel. This is a new question not raised in the court below or by assignment of cross-error. The record is devoid of any

evidence on the subject and we will not consider it. Rule 5:1 § 4.

The decree of the lower court is reversed, and this cause is remanded for such further proceedings as may be necessary and proper in accordance with the views herein expressed.

*Reversed and remanded.*