## CIRCUIT COURT OF CRAIG COUNTY

William G. Creasy

    v.

Herbert L. Tomlinson et al.

April 24, 1980

Case No. 231

By JUDGE ROSCOE B. STEPHENSON, JR.

In this declaratory judgment proceeding, the plaintiff, William G. Creasy (hereinafter "Creasy"), asks the court to determine the rights and obligations of the parties in a certain private road (hereinafter referred to as "the farm road") located on Creasy's farm. The defendants are Herbert L. Tomlinson and Dorothy J. Tomlinson (hereinafter "the Tomlinsons") and Fred E. Hamlin, Jr., and Sue P. Hamlin (hereinafter "the Hamlins").

The evidence was heard *ore tenus* by the court, and afterward the court viewed the properties in question.

Creasy owns a farm in Craig County which he acquired in 1962 from Dr. Fred E. Hamlin, the father of the defendant Fred E. Hamlin, Jr. When the farm was conveyed to Creasy, Dr. Hamlin retained ownership of a lot (improved by a vacation cottage) which is presently owned by the Hamlins. The Tomlinsons own a lot which is also improved by a vacation cottage. The Tomlinson lot adjoins the Hamlin lot, and both lots abut Craig Creek.

Dr. Hamlin acquired the farm in 1937. The farm road in question was in existence and was being used at that time, and it had been used for a number of years prior

thereto. From 1937 until his death in 1972, Dr. Hamlin used the farm road as the principal means of ingress to and egress from the cottage now owned by the Hamlins. Another means of access occasionally used by Dr. Hamlin was through a ford in Craig Creek.

The Tomlinsons' predecessor in title was B. R. Wilkinson who was a surveyor and builder. Wilkinson desired to construct a low water bridge at the site of the ford, and, in order to do so, he was granted an easement for a right of way at that location in 1955 by Dr. Hamlin and Howard Hanna. At the same time, Dr. Hamlin granted to Wilkinson the right to use the farm road so that Wilkinson would have "easy access" to his land. Wilkinson surveyed the center line for the farm road easement, but the width of the easement was not stated in the granting instrument. Dr. Hamlin had the right to use the bridge for access to his land.

Wilkinson constructed the low water bridge. It was a concrete slab approximately eight to ten feet wide which stood approximately one to two feet above the low water level of the creek. The bridge had no railings. In 1965, Wilkinson conveyed his lot to the Tomlinsons.

In 1962, Dr. Hamlin conveyed his farm to Creasy except for the cottage lot. The deed (which was prepared by Creasy, an experienced attorney at law) did not expressly reserve the farm road as an easement appurtenant to the cottage lot. At the time of the conveyance, however, the farm road was visible, apparent and in existence, and, as previously stated, was being used continuously by Dr. Hamlin as his principal means of ingress to and egress from his cottage property, which use continued until his death in 1972. Since 1969, the Hamlins and their guests have used the farm road to get to and from their property. They have never used the ford. Their lot was devised to them by the will of Dr. Hamlin.

Craig Creek is a large mountain stream. During periods of heavy rains, the water rises (often quite rapidly), and it flows swiftly and with great force. The force of the water's flow ultimately destroyed the bridge. It has not been used by anyone since 1971. Moreover, the old ford is no longer in existence. Since 1971, the easement across the creek has been impassible.

The force of the creek has also destroyed a portion of the farm road due to erosion, and further damage or destruction is indicated. Creasy has attempted to erect a fence between his fields and the farm road. This fence coupled with the erosion problem precipitated this litigation.

The first question to be resolved is whether the Hamlins have an easement over the farm road. They contend that they do for two reasons. First, they say that Creasy, in his Motion for Declaratory Judgment, admitted they have such an easement, and, second, they allege that an easement was reserved by implication when Dr. Hamlin conveyed the farm to Creasy. Creasy contends that the Hamlins' sole means of access is across the Creek at the site of the destroyed low water bridge, and that no implied easement over the farm road exists.

In Paragraph 14 of his Motion for Declaratory Judgment, Creasy alleged, *inter alia*, the following:

> This plaintiff hereby alleges that the intention of the parties as stated in said agreement and the uses established for many years permits the said defendants to use a private road 8 feet in width with a center line according to Exhibit A, page 4, with sufficient clearance on each side in order that they may with reasonable care and reasonable maintenance, safely negotiate the road where it was originally located, but not of a width in excess of its original width as established by the agreement dated May 21, 1955.

When this point was raised at trial by the Hamlins' attorney, counsel for Creasy stated that the right of way referred to in Paragraph 14 was the one "across the ford." (Transcript, p. 202). A reading of the entire Motion for Declaratory Judgment, however, indicates quite clearly that the road referred to in Paragraph 14 is the farm road in controversy. No controversy exists as to the easement across the ford. Moreover, it is equally clear that when Creasy referred to "the said defendants" in Paragraph 14, he was referring to those named near the beginning of that paragraph, viz., "the defendants Herbert

L. Tomlinson and Dorothy J. Tomlinson and *Fred E. Hamlin and Sue P. Hamlin.*" (italics added). It appears, therefore, that Creasy admitted that the Hamlins had the right to use the farm road in question. Similar admissions can be found in Paragraph 16 of the Motion.

A party cannot be heard to contradict his own pleadings. *Sydnor & Hundley* v. *Wilson Trucking*, 213 Va. 704, 707, 194 S.E.2d 733, 736 (1973); *West* v. *Anderson*, 186 Va. 554, 564, 42 S.E.2d 876, 880 (1947). And a litigant is estopped from taking a position which is inconsistent with one previously assumed. *Thrasher* v. *Thrasher*, 210 Va. 624, 628, 172 S.E.2d 771, 773-74 (1970); *McLaughlin* v. *Gholson*, 210 Va. 498, 501, 171 S.E.2d 816, 818 (1970); *Rohanna* v. *Vazzana*, 196 Va. 549, 84 S.E.2d 440 (1954); *Burch* v. *Grace Street Building Corp.*, 168 Va. 329, 340, 191 S.E. 672, 677-78 (1937).

In the present case, there is a clear and unequivocal admission by Creasy (a party to the transaction with Dr. Hamlin and a licensed attorney at law) that the Hamlins had the right to use the farm road, and the court holds that he is estopped from thereafter asserting an inconsistent and contradictory position.

Since the parties have fully briefed the question of an implied easement, the court will consider it, notwithstanding the holding above.

In order to establish an implied easement from pre-existing use, it must appear from clear and convincing evidence that the use of the way has been continuous, apparent, in existence at the time of the conveyance, and reasonably necessary for the enjoyment of the dominant tract. *Fones* v. *Fagan*, 214 Va. 87, 90, 196 S.E.2d 916, 918 (1973); *Sanderlin* v. *Baxter*, 76 Va. 299, 305 (1882).

In the present case, the court determines from clear, convincing and undisputed evidence that the use of the farm road has been continuous, apparent, and in existence at the time the farm was conveyed to Creasy by Dr. Hamlin. Creasy contends, however, that the use of this way by the Hamlins is not necessary, since another way existed at the time of the conveyance by use of the ford across Craig Creek.

Some jurisdictions have adopted the rule of *strict* necessity, but in Virginia, only *reasonable* necessity

need be proved. *Jennings* v. *Lineberry*, 180 Va. 44, 48, 21 S.E.2d 769, 771 (1942).

In *Pryor* v. *East*, 150 Va. 231, 142 S.E. 361 (1928), the court held an implied easement was established by the evidence. In that case, the dominant estate bordered on the county road, but, in concluding that the roadway which had been in use was reasonably necessary the court said:

> In the instant case, it is clearly established that the easement was apparent and continuous, and, we think, from the proof adduced, that it is reasonably necessary to the enjoyment of the dominant estate. The fact that complainants, if the roadway is closed, would have to expend probably the sum of $2,000 to build a roadway through practically a swamp, is of itself sufficient evidence of reasonable necessity to lead us to the conclusion that the decree of the circuit court is plainly right and should be affirmed. 150 Va. at 232, 142 S.E. at 362.

In *Smith* v. *Virginia Iron, Coal & Coke Co.*, 143 Va. 159, 129 S.E. 274 (1925), the court dealt with the question of the element of necessity as it relates to an implied easement, saying *inter alia*:

> It is true, as contended, that Virginia Iron, Coal & Coke Company has acquired other adjacent lands which touch the Tom's Creek-Dante Road on Sandy Ridge Mountain, but the topography of the country is such that it is not reasonably possible for the company to construct a wagon road from that road to its lands on the Birch Spring Fork. There has never been any road, other than one down the Fork, by which the properties on the Fork can be served.
>
> It appears from the evidence, without contradiction, that the construction of a wagon road up the mountain to the Sandy Ridge road would be wholly impracticable, as the cost of construction would be more than the value of the timber to be hauled and the land on which

it is located. Under such circumstances, it cannot be said that the necessity for the use of the right of way across the lands of the complainant has ceased to exist. 143 Va. 166, 167, 129 S.E. 277.

Creasy contends that when the deed was executed the farm road was not reasonably necessary for the enjoyment by Dr. Hamlin of his cottage lot because Dr. Hamlin, at that time, had use of the low water bridge. He relies primarily on the case of *Fones v. Fagan*, 214 Va. 87, 196 S.E.2d 916 (1976). The facts in *Fones*, however, are readily distinguishable from those in the present case. In *Fones*, none of the requisite elements for an implied easement were proved, and regarding the issue of necessity, the court said:

Nor has the requisite necessity for implication of such an easement been shown. Even though demonstration of prior use reduces the degree of necessity required, here *ready access* to Hunter Mill Road is available and is not economically unfeasible. 214 Va. 92, 196 S.E.2d 920. (Italics added.)

In the present case, the prior use of the farm road cannot be questioned. The road has existed for a great many years. It was apparent when Creasy purchased the farm. Additionally, the access which Dr. Hamlin had across the creek was certainly not "ready access." Water could rise above the bridge at any time, and use of the bridge was both inconvenient and hazardous to Dr. and Mrs. Hamlin and their guests. Therefore, the court finds that the farm road was *reasonably* necessary for the use and enjoyment of the Hamlin lot, and it holds that an easement exists along and over the farm road in favor of the Hamlins, which was impliedly reserved by Dr. Hamlin when he conveyed the farm to Creasy.

The court must also determine the location and width of the "farm road" easement.

Respecting location, that issue is easily resolved. The center line for the easement was surveyed and platted by Wilkinson in 1955, and recently has been re-surveyed

and located on the ground by T. P. Parker, a licensed land surveyor. The Wilkinson center line is controlling and constitutes the center line of the easement.

No width for the easement was expressly agreed upon by Dr. Hamlin and Wilkinson. Therefore, the court must determine its width by ascertaining the intention of the parties when it was created. 25 Am. Jur. 2d, *Easements and Licenses*, § 78, p. 485. The agreement between Dr. Hamlin and Wilkinson provided for "easy access." There was evidence indicating that large farm machinery (some as wide as sixteen feet) traveled this road. It is at least a quarter of a mile from the cottage lots to the public road, and it is only reasonable to assume that the parties intended the easement should be wide enough for automobiles to pass when meeting. Since Creasy intends to fence the easement, the court concludes, from the evidence and the reasonable inferences to be drawn therefrom, that the easement should be sixteen feet wide, i.e., eight feet on either side of the surveyed center line.

It is conceded by the defendants that "Creasy has the right to erect fences and install gates along the right of way." Defendants' Brief, pp. 25-6. Accordingly, that right will be so ordered.

Since the farm road is for the benefit of Creasy, the Tomlinsons and the Hamlins each shall share in the expense of maintenance and upkeep of the road on an equal basis, i.e., one-third of the expenses shall be borne by Creasy, one-third by the Tomlinsons and one-third by the Hamlins. Prevention of further erosion is a maintenance expense, and the alleviation of this problem is in the interest of all parties.

The defendants contend that the issue respecting the entrance or parking area at the rear of the two cottage lots was not raised by Creasy's Motion for Declaratory Judgment. The court agrees. If Creasy desires a decision on this issue, he may amend his Motion and give the defendants an opportunity to present evidence respecting their claims.