WALTER A. BERGMUELLER, ET AL.

V.

JOSEPH F. MINNICK, ET AL.

Record No. 880809

September 22, 1989

Present: All the Justices

*David A. Penrod (Hoover, Hoover, Penrod & Davenport,* on briefs), for appellants.

*Dennis L. Hupp for appellees Joseph F. Minnick and Anne E. Minnick.*

No briefs or arguments for appellees Koepfle Realty, Inc. and Katherine M. Scott.

Justice Russell delivered the opinion of the Court.

In this suit for rescission of a contract for the sale of land, the issues are whether there was constructive fraud on the part of the sellers' agent justifying rescission, and if so, whether the purchasers waived it.

Walter A. Bergmueller and his wife resided in Kansas in 1980. Planning to retire a few years later, they looked for property in the Shenandoah Valley near New Market upon which to build a retirement home. In the fall of 1980, the Bergmuellers met Katherine Scott, a real estate agent employed by Koepfle Realty, Inc., a broker in New Market. Koepfle had a listing to sell a 3.6-acre lot owned by Joseph F. Minnick and his wife.

Mrs. Scott showed the lot to the Bergmuellers during their visit, but they did not decide to purchase it until after their return to Kansas. During their visit, however, the Bergmuellers told Mrs. Scott that they were interested in the lot as a site for their future retirement home. She replied that she would have a percolation test performed to be sure that the lot would be suitable for a septic system.

Within a week after returning to Kansas, the Bergmuellers called Mrs. Scott and agreed to purchase the lot, subject to a satisfactory percolation test. A few days later, they received a draft contract of purchase in the mail which Mrs. Scott had prepared. Beneath the standard printed language, it contained a typewritten sentence: "This contract is contingent upon the Seller's obtaining a satisfactory percolation test prior to closing." Mr. Bergmueller testified that a few days later, Mrs. Scott called the Bergmuellers in Kansas and told them that "the percolation test was made on the property and the property 'perked' and it would be okay to buy it." They signed the contract and mailed it to her. The Bergmuellers had no direct contact with the owners of the lot, Mr. and Mrs. Minnick, prior to settlement.

Settlement was held on January 6, 1981, at the office of James P. Weissenborn, an attorney in New Market. The Bergmuellers remained in Kansas and "settled by mail," forwarding to the attorney their down payment, their purchase money note, and an executed deed of trust. Mr. and Mrs. Minnick attended the clos-

ing, along with their selling agent, Mrs. Scott. Mr. Weissenborn conducted the settlement pursuant to a written settlement memorandum on Koepfle's stationery, which Mrs. Scott had prepared and hand-delivered on December 11, 1980. The memorandum contained the following statement:

> "Percolation test: Copy of satisfactory approval in Broker's office. Copy has been mailed to purchaser."

Because Mr. Weissenborn accepted this statement as sufficient evidence that the contract contingency had been fulfilled, he completed the settlement.

In fact, no percolation test was ever performed. Mrs. Scott took the position that the Minnicks were responsible for obtaining a percolation test and mailing the report of test results to the Bergmuellers. The Minnicks contended that Mrs. Scott had assumed those responsibilities. In either event, because no test was made, there was no report to be mailed.

Rather than obtaining a percolation test, Mrs. Scott arranged for Alan Howard, sanitarian for the Shenandoah County Health Department, to meet Mr. Minnick on the land in October, 1980. Mr. Minnick dug some holes with a tractor and Mr. Howard, after examining the soil, issued a "Permit to Install Sewage Disposal System" to Mr. Minnick. The permit was void 12 months after issue and stated that it would be "[a]utomatically cancelled should facts later become known that a potential hazard would be created by continuing installation."

The permit was conditioned upon construction of a 3-bedroom house located as shown by stakes on the lot, which would consume no more than 600 gallons of water per day. Neither the agent nor the sellers had any idea what kind of house the purchasers intended to erect nor where it would be situated on the lot. The Bergmuellers had made no decisions in that regard and had not discussed their intentions with anyone. Mrs. Scott's husband, however, staked out a location for a house on the lot because the sanitarian would not issue a permit unless the stakes were in place.

The permit was never sent to the Bergmuellers and they were never aware of its existence. They were, therefore, unaware of its limitations with regard to type and location of house and time of construction. The Minnicks and Mrs. Scott, however, took the po-

sition that the existence of this permit fulfilled the contingency in the contract.

In the fall of 1983, Mr. Bergmueller retired from his job in Kansas. The couple moved to Virginia, rented a temporary home in New Market, and engaged a contractor to build a retirement home on their lot. The contractor made routine application for a permit to install a septic system. By that time, Shenandoah County had a new sanitary ordinance and a new sanitarian, Ronald Bowers.

Because the permit issued by his predecessor three years earlier had expired, Mr. Bowers visited the lot and made a soil examination. He ascertained that a percolation test would be unnecessary because a layer of hardpan lay close to the surface and the seasonal water table rose so high that in wet weather a septic field would cause raw sewage either to back up into the house or overflow the surface of the soil. Mr. Bowers therefore denied the permit. He testified that although the condition could readily be ascertained by boring holes without a percolation test, a percolation test would also have revealed it.

The Bergmuellers brought this suit in equity in 1985 against the Minnicks, praying for rescission and restoration to the *status quo ante.* The Minnicks brought a cross-claim naming Mrs. Scott and Koepfle, her employer, as cross-defendants. The chancellor heard the evidence *ore tenus* and, by written opinion, held that the contingency in the contract was not met and that the Bergmuellers had the right to refuse settlement; that this contractual provision was not merged in the deed, but survived settlement; that nevertheless, the defendants and cross-defendants were not guilty of intentional misrepresentations or misleading; and that the Bergmuellers, having equal means of obtaining the information upon which they depended, waived their right to complain of the non-fulfillment of the contingency by proceeding to settlement without making an independent verification of the facts. We awarded the Bergmuellers an appeal from a final decree entered April 15, 1988, which dismissed their bill of complaint.

The Bergmuellers base their claim for rescission upon allegations amounting to constructive fraud, not actual fraud. They make no contention that they were intentionally deceived. We set forth the elements of constructive fraud in *Nationwide Ins. Co.* v. *Patterson*, 229 Va. 627, 629, 331 S.E.2d 490, 492 (1985) in the following language:

In order to establish constructive fraud one must prove the following by clear, cogent, and convincing evidence: [1] that there was a material false representation, [2] that the hearer believed it to be true, [3] that it was meant to be acted on, ■ that it was acted on, and [5] that damage was sustained.

It is apparent from the findings of fact made by the chancellor that the Bergmuellers carried their burden of proving constructive fraud by clear and convincing evidence. The chancellor found that the failure of the sellers to obtain a percolation test was a material breach of the contract which would have given the purchasers an excuse for non-performance. Thus, the representation made in writing by the sellers' agent at and before settlement: "Percolation test: Copy of satisfactory approval in Broker's office," was both material and false. The hearer, the settlement attorney who acted as the purchasers' agent with respect to insuring that contract contingencies were met before disbursing funds, believed the representation to be true. The representation was acted on by completing the settlement. The purchasers sustained damage by paying for a lot which was worthless for their purposes.

■ Constructive fraud is a ground for rescission in equity, even when based upon false representations innocently made. The real inquiry is not whether the seller knew the representation to be false, but whether the purchaser believed it to be true, and was misled by it into acting to his detriment. *Trust Co. of Norfolk* v. *Fletcher*, 152 Va. 868, 879, 148 S.E. 785, 788 (1929).

■ It follows that the Bergmuellers were entitled to the relief of rescission unless they waived that right by proceeding to settlement. The trial court, relying on *Costello* v. *Larsen*, 182 Va. 567, 29 S.E.2d 856 (1944), took the view that (1) the Bergmuellers and the Minnicks had equal means of access to the true state of facts, (2) the Bergmuellers might easily have asked to see the results of a percolation test before proceeding to settle, but they carelessly accepted the Minnicks' deficient performance without making further inquiry, and (3) they thereby waived the provision inserted into the contract for their protection.

■ *Costello* is inapposite. That case was an action in tort to recover damages for deceit. There, we affirmed the trial court's dismissal of the action on demurrer because the facts pleaded related to statements of opinion made in reference to future occurrences, rather than representations of existing fact. Language in

*Nationwide* is particularly germane to the present case: "[O]ne cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth." 229 Va. at 631, 331 S.E.2d at 492.

Waiver is the voluntary, intentional abandonment of a known legal right. It has two essential elements: (1) knowledge of the facts basic to the exercise of the right, and (2) the intent to relinquish that right. *Fox* v. *Deese*, 234 Va. 412, 425, 362 S.E.2d 699, 707 (1987). A waiver will not be implied if either element is lacking, and both are lacking here. The Bergmuellers had no knowledge of the true state of facts, nor were they in possession of information sufficient to arouse their suspicions or put them to the duty of further inquiry. They had no reason to distrust Mrs. Scott's flat assertions of existing fact, and they manifested no intention to waive their contractual protection of a "satisfactory percolation test."

Having determined that the chancellor erred in dismissing the bill of complaint, we will reverse the decree appealed from and remand the cause for the entry of a decree of rescission and for such further proceedings, consistent with this opinion, as may be appropriate.

*Reversed and remanded.*

Justice Whiting, dissenting.

I cannot agree with the majority's opinion for three reasons. First, it rewards the negligence of buyers who, almost three years after they should have done so, finally asked to see a document which they were required to be satisfied with as a condition of closing. Second, it penalizes the sellers who supplied what they, in good faith, thought was required of them. Third, it ignores the fact that the buyers' agent knowingly accepted a performance differing from that explicitly required as a pre-condition to the buyers' closing the sale.

Because "a satisfactory percolation test prior to closing" was a contingency solely for the buyers' benefit, it was their duty to ask to see it prior to closing. Instead of doing so, they relied on the word of the sellers' real estate agent that a satisfactory percolation test had been performed. Yet, as the majority points out, no one

knew what would satisfy the buyers. Since the majority criticizes the selling agent's husband's choice of a location for the house and the number of proposed bedrooms, I assume it believes the buyers should have made those choices.

Mr. Bergmueller said he knew what was involved in a percolation test; therefore, he must have known that he, or someone acting on his behalf, would have to: (1) choose a spot for the house in order to see whether the nearby land would "perk"; and (2) know the number of proposed bedrooms, which would impact upon whether any percolation test would be satisfactory to him. Yet he made no attempt to determine whether the agent's allegedly satisfactory percolation test took account of these factors.

Although the concept of waiver is not applicable, I believe the evidence demonstrates that the buyers should be estopped from asserting the inadequacy of the percolation test after completely accepting the agent's representations regarding this contractual pre-condition. "One who has, with knowledge of the options open to him, elected to assume one position is thereafter estopped to assume an inconsistent position to the prejudice of another who has been led to rely upon his first position." *Employers Ins. Co.* v. *Great American*, 214 Va. 410, 413, 200 S.E.2d 560, 563 (1973) (citing *Thrasher* v. *Thrasher*, 210 Va. 624, 172 S.E.2d 771 (1970)). As mentioned above, the buyers' agent knew what was necessary for a satisfactory percolation test, yet did not exercise the buyers' contractual right to ensure that appropriate factors were taken into consideration in performing the test. Instead, he chose to rely on the sellers' blanket representations regarding the sufficiency of the testing that was done. For this reason, the buyers should be estopped from raising the lack of a percolation test so long after closing.

Allowing the buyers to raise the lack of a percolation test almost three years after they should have asked for it, rewards their negligence and penalizes the sellers' good faith in trying to supply what they thought the buyers wanted.

As the majority points out, the buyers constituted Mr. Weissenborn as their agent for the closing. The evidence supports the trial court's finding that Mr. Weissenborn "was aware of the requirement for a percolation test . . . and knowing that a health permit had been issued it was his opinion that the condition had been met. He made no distinction between a health permit to install a sewage disposal system and a satisfactory percolation test."

In my opinion, based on these facts, the buyers should be estopped from asserting the lack of a percolation test at this late date, no matter what the agent's closing statement said.

For the foregoing reasons, I would affirm the judgment.