JUSTICE MIMS, concurring in part and dissenting in part.
Yancey did not prove by clear and convincing evidence that it is reasonably necessary to use tractor-trailers to harvest the timber on its property, but only that doing so would maximize its profits. Accordingly, I respectfully dissent.
A court once observed that "[f]ew things are as certain as death, taxes and the legal entanglement that follows [the conveyance] of landlocked real estate." Bob Daniels & Sons v. Weaver, 106 Idaho 535, 681 P.2d 1010, 1013 (Idaho Ct. App. 1984). Many of these entanglements involve the creation and scope of easements implied by necessity. When "determining whether an easement [by necessity] should be implied," "[t]he fact of the necessity ... is of great importance." Jennings v. Lineberry, 180 Va. 44, 48, 21 S.E.2d 769, 771 (1942) (quoting 17 Am. Jr. Easements § 48 (1938)). This requisite "necessity" is "not a physical or an absolute necessity but a reasonable and practicable necessity." Smith v. Virginia Iron, Coal & Coke Co., 143 Va. 159, 164, 129 S.E. 274, 276 (1925). Importantly, the reasonable necessity justifying either the creation of an easement or the expansion of its scope must be proven by clear and convincing evidence and generally cannot be proven if other access is available, even though that access is less convenient or more expensive. American Small Bus. Inv. Co. v. Frenzel, 238 Va. 453, 456-57, 383 S.E.2d 731, 734 (1989).
Without question, we have recognized easements by necessity in circumstances where the dominant estate would otherwise be unfit for its foreseeable beneficial use despite the existence of an alternative access. But in those cases, the evidence clearly and **165 convincingly demonstrated that using the available access would be economically unreasonable. In Smith v. Virginia Iron, Coal & Coke Company, for example, the Court considered whether the defendant was entitled to an easement by necessity over neighboring land to use when harvesting timber. 143 Va. at 163, 129 S.E. at 275-76. By the time of the litigation, the defendant had acquired land adjacent to its would-be dominant estate with frontage on a public highway at the top of a mountain. Id.at 166, 129 S.E. at 277. However, the evidence demonstrated, "without contradiction, that the construction of a ... road up the mountain to the [public highway] would be wholly impracticable, as the cost of construction would be more than the value of the timber to be hauled and the land on which it is located." Id.at 167, 129 S.E. at 277 (emphasis added). Plainly, constructing such a road was not impossible, and the easement was therefore not absolutely necessary. Nevertheless, the *757 Court held that this alternative access did not extinguish an otherwise valid easement by necessity. Id.[1]
In accordance with the above principles, it was not necessary for Yancey to show that the use of tractor-trailers to harvest its timber is absolutely necessary. However, Yancey was required to do more than show that using ten-wheelers would be less efficient and more expensive. MacCaskill v. Ebbert, 112 Idaho 1115, 739 P.2d 414, 419 (Idaho Ct. App. 1987) ("[O]ne seeking an easement need not show that a legally available route is absolutely impossible to use ... [but] neither is it sufficient merely to show that the legally available route would be inconvenient or expensive.... Rather, an easement by necessity should be granted only if the difficulty or expense of using the legally available route is so great that it renders the parcel unfit for its reasonably anticipated use." (citation omitted)). The evidence, viewed in the light most favorable to Yancey, failed to do this.
**166 While Yancey did not use tractor-trailers the last time it harvested the timber from the property, the evidence showed that the modern "industry standard" for a property of this size supports their use. Moreover, as Part II(B)(1) of the majority opinion notes, the testimony provided by Emmett and Endsley establishes that tractor-trailers would be "the most efficientway to haul the logs from the Yancey Property over the Access Road to [the public highway], and from there to Yancey's sawmill." (emphasis added). But an easement by necessity is not intended to ensure that the owner of landlocked real estate can efficiently maximize his profits to the detriment of his neighbor's enjoyment of her property. While the majority points to significant evidence demonstrating that Yancey's timber can be most efficiently harvested using tractor-trailers, there is no evidence demonstrating that the cost incurred by using ten-wheelers is so great when compared to the value of the timber that it would make timbering the Yancey Property unreasonable.
Yancey's trial attorney directly asked Emmett what he would do if his only option was "cutting [the pines] short and taking them out on smaller trucks." Emmett frankly stated, "I don't know" and that "[w]e'd have to look at it." He suggested that under those circumstances he might "put the timber up for sealed bids and let somebody else buy it," which is what Yancey does for the majority of its investment properties.[2] While Emmett testified that he would expect fewer bids for the timber under those circumstances, he admitted that "[t]here are people who ... buy shorter pines."
This testimony not only shows that options other than using tractor-trailers may exist for harvesting the timber, but also that Yancey has not investigated the economic viability of these options. Moreover, beyond his general assertions that it is the industry standard to use tractor-trailers on a property of this size, and that using ten-wheelers would generally reduce the expected profit, Endsley likewise provided no testimony regarding the specific expense that would be incurred from using ten-wheelers to harvest the timber on the Yancey Property. In fact, Endsley admitted that **167 even if tractor-trailers were not allowed on the Access Road, there would still be value in Yancey's timber.
"Courts must be very careful before decreeing upon one man's land in favor of another without compensation such an [e]ncumbrance as a way, permanently impairing that man's dominion and ownership, which *758 next to life and liberty, is the most valuable of rights inhering in the citizen." Crosier v. Brown, 66 W.Va. 273, 66S.E. 326, 327 (1909). The cost associated with using ten-wheelers may in fact be so great that Yancey's use of tractor-trailers is reasonably necessary. However, in my view, the evidence in this case does not rise to the level that justifies the expansion of an easement by necessity. As I conclude that Yancey has failed to prove by clear and convincing evidence that using tractor-trailers is reasonably necessary, I would reverse the circuit court's order to the extent that it allows for their use.[3]

Similarly, the Colorado Court of Appeals declined to acknowledge an easement by necessity when there was "no evidence" that the cost of constructing an alternative access over available land would be "prohibitive, or grossly in excess of the value of the estate itself." LeSatz v. Deshotels, 757 P.2d 1090, 1093 (Colo. Ct. App. 1988) ; see also D'Addario v. Truskoski, 57 Conn.App. 236, 749 A.2d 38, 45 (2000) ( "It may be ... that while access to the property is not absolutely cutoff, the circumstances ... are such that the means of access available would not afford the landowner any real beneficial enjoyment of his property. Such a situation would arise when the expense of making the means of access available would exceed the entire value of the property to which access was sought.").

Emmett testified that in addition to operating a sawmill, Yancey also owns approximately a dozen timber investment properties, including its property at issue in this case. Typically, Yancey sells the harvesting rights to the timber on its investment properties to other companies.

Because Endsley repeatedly testified that his recommended modifications to the Access Road would be necessary regardless of whether the Yancey Property was harvested using ten-wheelers or tractor-trailers, I do not dissent from Part II(B)(2) of the majority opinion.